**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 1 2004**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

ANDERSON BLACK,

    Defendant-Appellant.

No. 03-4174

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. No. 00-CR-476-DKW)**

---

Jenine M. Jensen, Assistant Federal Public Defender, (Michael G. Katz, Federal Public Defender, with her on the brief), Denver, Colorado, for the defendant-appellant.

Michael S. Lee, Assistant United States Attorney, (Paul M. Warner, United States Attorney, with him on the brief), Salt Lake City, Utah, for the plaintiff-appellee.

---

Before **SEYMOUR**, **BRISCOE**, and **TYMKOVICH**, Circuit Judges.

---

**BRISCOE**, Circuit Judge.

---

    Defendant Anderson Black appeals his convictions of two counts of first-degree murder on Indian land, in violation of 18 U.S.C. §§ 1111 and 1153(a), one count of assault with a dangerous weapon on Indian land, in violation of 18 U.S.C. §§ 113(a)(3)

and 1153(a), and one count of assault resulting in serious bodily injury on Indian land, in violation of 18 U.S.C. §§ 113(a)(6) and 1153(a). We have jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## I.

The essential facts of this case are not disputed. After a night of heavy drinking, Black went to his parents' house where his wife, his niece, his three-year-old son, and his one-year-old daughter were staying. He proceeded to beat his wife. When his wife escaped, Black assaulted his niece, cutting her across the face with a kitchen knife, and murdered his two children, cutting their throats. Black then drove to the home of his sister, Cecilia Black Lee, and informed her that he had killed his children. The only issue at trial was whether the murders were premeditated. Black contended he suffered from diminished capacity, specifically that he was an alcoholic and very intoxicated at the time of the murders.

Lee testified at trial regarding her brother's demeanor and statements on the night of the murders. During her testimony, the district judge interrupted her numerous times to ask her to speak louder and directly into the microphone. After one interruption, Lee asked for permission to testify in Navajo. Neither counsel nor the court responded and Lee continued to testify in English. Several minutes later, defense counsel interrupted the government's direct examination of Lee and stated: "Your Honor, I am concerned whether this witness would be more comfortable in Navajo than in English. There was

2

something that was said early on by the witness, and if she is uncomfortable in English then I am uncomfortable having her testify that way." ROA, Vol. IV at 380. The district court directed Lee to continue her testimony in English. On cross-examination, Lee testified that she was most fluent in Navajo and that she used that language when speaking with her brother. She acknowledged that she spoke English in school and that she sometimes spoke English in her work as a cashier. She denied there was any need for the prosecutor to repeat or clarify any questions that had been asked.

During the testimony of Dr. Todd Grey, a medical examiner called by the government, the court admitted an autopsy photograph. When the photograph was shown to the jury, one juror fainted. After the juror had been revived and examined by a physician, the juror met with the district judge and counsel in chambers. The district judge asked the juror: (1) "Do you feel okay now?" (2) Do you want to continue on?" (3) "Do you feel that your impartiality has been questioned in any way by what has occurred?" ROA, Vol. V at 647-48. The juror responded that she felt okay, that she would continue, and that she did not feel her impartiality was questioned. The court gave counsel an opportunity to ask additional questions and they declined. However, defense counsel moved for a mistrial or, alternatively, that the juror be excused from the jury panel. The district judge denied both defense motions. When the jury returned to the courtroom, the district judge addressed them as follows:

> [The juror] is going to go forward. She has insured me that she feels
> all right and is willing to proceed. I feel that she should continue on if she

wants to. She said that she is all right physically now. The rest of you should certainly not consider this in connection with what your verdict might be in this case.

Do any of you feel in any way that your impartiality that you assured me about before trial has been affected? If so raise your hand.

Counsel have agreed that in the continued testimony of Dr. Grey that the photographs will not be used, any of the photographs. Do any of you feel that you could not continue for any reason? If so raise your hand.

Id. at 649-50. No juror responded.

At the conclusion of the five-day trial, the jury found Black guilty of two counts of first-degree murder on Indian land (Counts I and II), one count of assault with a dangerous weapon on Indian land (Count III), and one count of assault resulting in serious bodily injury on Indian land (Count IV). He was sentenced to concurrent terms of life imprisonment on Counts I and II.

II.

On appeal, Black argues (1) that the district court erred in refusing to appoint an interpreter to allow two witnesses to testify in the Navajo language; (2) that the court erred by not dismissing the juror who fainted during trial; and (3) that the court erred by not declaring a mistrial due to the juror fainting.

*Failure to appoint interpreter*

The Court Interpreter's Act provides that a district court shall utilize an interpreter

*if the presiding judicial officer determines* on such officer's own motion or on the motion of a party that such party (including a defendant in a criminal case), or *a witness* who may present testimony in such judicial proceedings . . . *speaks only or primarily a language other than the English language . . . so as to inhibit such party's comprehension of the proceedings or*

4

*communication with counsel or the presiding judicial officer, or so as to inhibit such witness' comprehension of questions and the presentation of such testimony.*

28 U.S.C. § 1827(d)(1) (emphasis added). Thus, "a defendant is only statutorily entitled to the appointment of an interpreter if the district court determines that the defendant [or a witness]: (1) speaks only or primarily a language other than the English language; and (2) this fact inhibits their comprehension of the proceedings or communication with counsel." United States v. Johnson, 248 F.3d 655, 661 (7th Cir. 2001). "We review the trial court's determination with respect to the appointment . . . of an interpreter only for an abuse of discretion." United States v. Urena, 27 F.3d 1487, 1492 (10th Cir. 1994); see also United States v. Sandoval, 347 F.3d 627, 632 (7th Cir. 2003) (stating "[t]he district court is afforded wide discretion in implementing the Court Interpreter's Act because it is in the best position to evaluate the need for and the performance of interpreters").

Although Lee may have been "more comfortable" with the Navajo language, as defense counsel suggested at trial, it does not appear from her lengthy testimony that she had any difficulty with the English language. To the contrary, her clear and responsive answers throughout her testimony demonstrated that she was fluent in the English language. It does not appear from the record that she struggled with either vocabulary or grammar in her responses. When asked, she denied the need to have the prosecutor repeat or clarify any question that had been asked.

Black focuses on a few relatively short portions of Lee's testimony during which

5

she appeared to misinterpret a question or was unable to recall an answer. Black also notes that the district court interrupted Lee's testimony repeatedly because she could not be understood. However, the complete transcript of Lee's testimony reveals that the reason she could not be understood was that she was soft-spoken and failed to speak into the microphone. The district court interrupted Lee repeatedly to ask her to speak louder and to move closer to the microphone. Black notes that at one point during the government's direct examination of Lee, defense counsel stated, "I am not getting any of this," and the court responded, "Nobody is." ROA, Vol. IV at 379. However, immediately prior to this exchange, the court stated that the jury "is not hearing this," and the prosecutor instructed Lee to "scoot just a little bit closer and speak as loud as you can." Id. Although Lee was unable to answer many of the questions posed to her, the problem was her lack of recollection, not her lack of mastery of the English language. We cannot conclude that the district court abused its discretion by failing to appoint an interpreter.

Relatedly, Black argues the district court should have at least made an inquiry into the possible need for an interpreter. Black argues this case is similar to United States v. Osuna, 189 F.3d 1289 (10th Cir. 1999), where, in a split decision, this court concluded it was plain error for the district court to fail to inquire into the defendant's need for a Spanish-speaking interpreter and remanded for "findings, and if necessary, further

proceedings in the trial court to make those findings." Id. at 1294.[1]

In Osuna, it was clear from the record that defendant's language difficulty was apparent at trial. Defendant lapsed into Spanish during his testimony and there were fourteen places in the transcript where the court reporter noted defendant's testimony was "unintelligible." Id. at 1293 n.3. At one point, the prosecutor stated that "maybe we ought to have a Spanish interpreter." Id. at 1291 n.1 (internal quotation omitted). Based on that record, we concluded that, "due to the difficulties *which became apparent during the trial proceedings* here, it was the trial judge's duty to inquire into the possible need to obtain the services of an interpreter under the Court Interpreters Act." Id. at 1294 (emphasis added). In the present case, there is no indication in the record that communication difficulties similar to those in Osuna were apparent to the district court during the trial proceedings.

Further, when viewed in the context of Lee's entire testimony, the district court's duty to inquire as to the need for an interpreter was not triggered by her request that she be allowed to testify in Navajo, her statement that she was most fluent in Navajo, or by defense counsel's suggestion that she might be more comfortable testifying in Navajo.

---

[1] In Osuna, the possible need for an interpreter was not raised at trial and we applied the plain error standard of review. On remand, the district court held an evidentiary hearing and found that defendant had not been inhibited in his ability to understand or communicate. Defendant challenged that finding in a second appeal. This court affirmed, concluding the district court's finding was not clearly erroneous. United States v. Osuna, 2001 WL 37704 (10th Cir. Jan. 16, 2001).

7

Black relies heavily on the fact that in <u>Osuna</u>, the majority quoted with approval <u>United States v. Tapia</u>, 631 F.2d 1207, 1209 (5th Cir. 1980), where it was stated: "Any indication to the presiding judicial officer that a criminal defendant speaks only or primarily a language other than the English language should trigger application of Section (d) and (f)(1) [defendant's waiver of right to interpreter] of the Court Interpreter's Act." <u>Osuna</u>, 189 F.3d at 1291. Black cites the "[a]ny indication" language in <u>Osuna</u> to argue the appointment of an interpreter was required here. However, the majority in <u>Tapia</u> also quoted <u>Valladares v. United States</u>, 871 F.2d 1564, 1565-66 (11th Cir. 1989) where the court stated: "Section 1827 does place on the trial court a mandatory duty to inquire as to the need for an interpreter *when a defendant has difficulty with English*." (Emphasis added.) Further, in <u>Osuna</u>, the majority's analysis relied to a great extent on the fact that language difficulties were apparent during the trial. The concurring opinion questioned whether <u>Tapia</u> set forth the proper standard and relied instead on narrower grounds, concluding "the number of unintelligible portions of the transcript, the judge's repeated efforts to clarify the testimony offered by the defendant, and particularly the prosecutor's explicit concern that 'maybe we ought to have a Spanish interpreter,'" when taken together, were sufficient to trigger the court's duty to inquiry into the need for an interpreter. <u>Osuna</u>, 189 F.3d at 1295 (Henry, J., concurring). The dissenting opinion concluded there was no evidence in the record that established defendant's primary language was other than English. <u>Id.</u> at 1296 (Brorby, J., dissenting).

Finally, we note that in a "supplemental memorandum brief" filed almost two months after his reply brief, Black argues for the first time that the district court should have appointed an interpreter for a second government witness, Alice Begay, who was also Black's sister. Failure to raise an issue in the opening appellate brief waives that issue. United States v. Minjares-Alvarez, 264 F.3d 980, 984 n.2 (10th Cir. 2001). Even if we would consider the issue, it is apparent from the record that Begay, like Lee, was fluent in the English language and her inability to answer some questions was due to her lack of recollection.

*Fainting juror – removal*

Black argues the juror who fainted should have been removed as a juror and replaced with an alternate. According to Black, the juror's "fainting during trial made it clear that she was unable to continue." Aplt. Br. at 18. Further, Black contends the incident "had to have affected the ability of the other jurors to remain objective and impartial, particularly since [the juror] was allowed to remain on the jury." Id. at 19.

Federal Rule of Criminal Procedure 24(c)(1) authorizes district courts to replace "any jurors who are unable to perform or who are disqualified from performing their duties." "[T]he decision whether to excuse a juror rests on whether the juror can remain impartial, a matter of fact uniquely within the observation of the trial court." United States v. McVeigh, 153 F.3d 1166, 1185 (10th Dir. 1998). "[W]e give due deference to jurors' declarations of impartiality and the trial court's credibility determination that those

9

declarations are sincere." Id. at 1184.

The district court questioned the jurors and they all affirmed that their impartiality was not affected by the fainting incident. Moreover, Black fails to explain why he believes the juror's fainting indicates her bias or inability to remain objective or impartial. Her fainting merely indicates that she was disturbed by the gruesome nature of the photograph, not any particular bias on her part. Black has failed to direct our attention to any logical connection between the juror's reaction to the photograph and her ability to evaluate his mental state at the time of the murders – the only issue at trial. Further, since government counsel agreed not to admit any additional photographs, the juror's fainting was not an indication of her inability to continue or an indication that her continued presence would be disruptive.

Finally, Black relies on the district court's random draw procedure for the designation of alternates just prior to jury deliberations as support for his argument that the juror who fainted could have been easily removed.[2] According to Black, due to the district court's use of the procedure, two jurors had to be dismissed prior to deliberations and "[c]ommon sense dictates" that the fainting juror should have been one of those jurors. Aplt. Br. at 20. We fail to see how the district court's use of the random draw procedure is relevant to our inquiry. The question before us is whether the district court

_____

[2] The court's use of the random draw procedure has not been raised as an issue in this appeal.

10

abused its discretion by allowing the juror to continue as part of the jury panel. In the absence of any viable claim of bias or lack of objectivity or impartiality, we conclude the district court did not abuse its discretion in allowing the juror to continue.

*Fainting juror – mistrial*

Black argues the district court violated his Sixth Amendment right to a fair trial by failing to declare a mistrial after the juror fainted. When a mistrial motion is based on the assertion that "disruptive incidents" have prejudiced the jurors, the standard is whether there has been "an impingement upon the right of the appellant to be tried before a fair and impartial jury." United States v. Evans, 542 F.2d 805, 815 (10th Cir. 1976) (internal quotations omitted). We review a trial court's denial of a motion for mistrial for an abuse of discretion. United States v. Meienberg, 263 F.3d 1177, 1180 (10th Cir. 2001).

In Evans, we affirmed the district court's denial of three separate defense motions for mistrial. The motions followed three disruptive incidents during trial. The first motion was made after a juror notified the court that he had received a letter signed by one of the defendants. The court questioned the jurors individually in chambers and collectively in open court and the jurors indicated they had not been influenced. The second motion was made after a defendant blurted out the fact that a bomb threat was received in the courthouse. The court instructed the jury to disregard the remark. The third motion was made after a witness "lunged into the jury box," landing in a juror's lap. Id., 542 F.2d at 815. The court examined each juror individually regarding the incident

11

and each juror responded that the incident would not affect his or her judgment. In affirming, we noted (1) that the jury had been "questioned extensively," (2) they "repeatedly responded that the incidents would have no effect on their impartiality," (3) the district court had "repeatedly stated that the incidents were not to be held against the [defendants]." (4) the district court "formally instructed the jury to disregard the incidents," and (5) a "diversity of the verdicts" returned by the jury supported the conclusion that the jury deliberated impartially. Id. Contrary to Black's assertions, Evans does not establish mandatory measures that must be taken in response to any disruptive incident during the course of a jury trial. In Evans, we merely concluded there was "no error in the manner in which the trial judge handled the incidents." Id. at 816. We did not indicate that the court would have erred if it had responded differently.

Further, the incident in this case was significantly different in nature than the three incidents in Evans. Here, the measures taken by the district court were adequate in light of the nature of the disruption involved. The court questioned the juror and the rest of the jury panel and there is no indication in the record that the jury's impartiality was affected. Moreover, as in Evans, the court instructed the jury not to consider the incident in its deliberations. Black argues the court erred by failing formally to instruct the jury to disregard the incident in the jury instructions read at the close of evidence. We disagree. Instead of drawing attention to irrelevant matters in the formal jury instructions, the district court focused the jury's attention on what was relevant. In several instructions,

12

the court focused the jury's attention on the evidence presented at trial. See, e.g., ROA, Vol. I, Doc. 100, Instr. 2 (stating "[y]ou have been chosen as jurors in this case to try the issues of fact presented . . . . The law does not permit jurors to be governed by sympathy, prejudice, or public opinion"); Instr. 3 (stating, "[t]he evidence in this case consists of the sworn testimony of the witnesses . . . and all exhibits received in evidence . . . and all facts which may have been admitted or stipulated"). Further, we are to assume that juries follow their instructions. See Zafiro v. United States, 506 U.S. 534, 540 (1993). When the juror's fainting and the court's response to the incident are viewed in context, we conclude the district court did not abuse its discretion in denying Black's motion for mistrial.

AFFIRMED.

13