**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 16, 2005**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

CHEZ DOUGLAS,

      Plaintiff-Appellant,

v.

PAMELA DOBBS, SCOTT KEY, and
DISTRICT ATTORNEY'S OFFICE
FOR THE TWELFTH JUDICIAL
DISTRICT,

      Defendant-Appellee.

No. 04-2118

---

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. CIV-02-1434)**

---

Thomas L. Murphy, Rosenfelt, Buffington & Borg, P.A., Gallup, New Mexico,
for Plaintiff-Appellant.

Barbara A. Patterson, Atwood, Malone, Turner & Sabin, P.A., Roswell, New
Mexico, for Defendant-Appellee.

---

Before **LUCERO** and **TYMKOVICH**, Circuit Judges, and **BLACKBURN**,[*]
District Judges.

---

**LUCERO**, Circuit Judge.

---

[*] The Honorable Robert E. Blackburn, United States District Judge for the
District of Colorado, sitting by designation.

Chez Douglas brings this 42 U.S.C. § 1983 action alleging that her right to privacy was violated by a police search of her pharmacy prescription records executed pursuant to a court order. The district court granted summary judgment for defendants, finding that Douglas's right to privacy had not been violated, and that defendants were entitled to qualified immunity. On appeal we must decide whether Douglas has a right to privacy in her prescription drug records, and if so, whether that right was violated by the role of the Assistant District Attorney ("ADA") in the search. We conclude that persons have a right to privacy in their prescription drug records. Because we also conclude that Douglas has failed to demonstrate that the ADA violated a clearly established constitutional right, we agree with the district court that the remaining defendant before us is entitled to qualified immunity. Accordingly, we **AFFIRM**.

## I

Chez Douglas (a.k.a. Renee Haynes), the plaintiff below, sued, inter alia, the Village of Ruidoso, Sergeant Randy Spear, and ADA Pamela Dobbs and District Attorney ("DA") Scott Key under 42 U.S.C. § 1983 for violating her civil rights when they authorized and conducted a search of her pharmacy prescription records.[1] Sergeant Spear learned from Douglas's physician, Dr. Christopher

---

[1] Douglas's First Amended Complaint also asserted claims of excessive
(continued...)

2

Robinson, who had prescribed pain medication to Douglas, that he suspected Douglas of abusing prescription medication by forging prescriptions and by running through her prescriptions too quickly. Dr. Robinson also stated that he believed Douglas was obtaining additional prescriptions using a different name – Haynes – to procure those prescriptions from another physician in Roswell. After Dr. Robinson provided Sergeant Spear with contact information for Douglas, Sergeant Spear prepared a "Motion and Order to Produce Prescription Information" for the purpose of acquiring Douglas's prescription records from a local pharmacy. Before presenting the motion to a judge for authorization to conduct the search, Sergeant Spear consulted with ADA Dobbs. The complaint alleges that Dobbs "approved the form of the Motion and Order" which was then submitted to a magistrate. A judge granted the motion, and pursuant to that authorization, Sergeant Spear obtained Douglas's prescription records from a local pharmacy. Subsequent to the search, charges against Douglas for fraudulently altering the dosage amount and quantity of pills in a prescription were filed, but were later dismissed. Douglas then initiated this suit.

Douglas argues that ADA Dobbs violated her privacy and Fourth

[1](...continued)
force used against her by police officers pursuant to an arrest for driving while intoxicated. The claims related to that incident have settled and form no part of the present appeal.

3

Amendment rights by authorizing Sergeant Spear's submission of the Motion and proposed Order to the magistrate judge for approval to search her prescription records. Before the district court, Douglas also alleged that DA Key violated her rights in his supervisory role. All other defendants to this suit settled and ADA Dobbs and DA Key moved for summary judgment. The district court found that no clearly established Fourth Amendment right had been violated by ADA Dobbs in the search of Douglas's prescription records and that qualified immunity applied. Additionally, the district court found that DA Key could not properly be held liable under Douglas's municipal liability claim.[2] Douglas now appeals the grant of summary judgment against the remaining defendant, ADA Dobbs, arguing that she had a right of privacy in her confidential prescription records which Dobbs violated by authorizing the submission of the Motion and proposed Order to the magistrate judge to obtain approval to search Douglas's prescription records.

## II

We review the district court's ruling that ADA Dobbs is entitled to qualified immunity de novo. Farmer v. Perrill, 288 F.3d 1254, 1259 (10th Cir.

---

[2] Douglas does not contest in her opening brief the district court's finding that she cannot sustain a claim for municipal liability against DA Key, and therefore we do not address this issue on appeal. United States v. Black, 369 F.3d 1171, 1176 (10th Cir. 2004) ("Failure to raise an issue in the opening appellate brief waives that issue.").

4

2002). Under the doctrine of qualified immunity, "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). When a defendant raises a claim of qualified immunity, the burden shifts to the plaintiff to show that the defendant is not entitled to that immunity. Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001); see also, Scott v. Hern, 216 F.3d 897, 908-09 (10th Cir. 2004) (stating that state attorneys receive qualified immunity for actions that are primarily investigative or administrative).

In order to determine whether a government official is entitled to the protection of qualified immunity, a court must ordinarily conduct a two-part inquiry. First, we ask whether the facts alleged, viewed in the light most favorable to the party asserting injury, show the official's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001). Second, a court must ask "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202. We have also established a third inquiry that applies when "extraordinary circumstances" prevent officials from knowing that their conduct violates a clearly established constitutional right. Roska ex rel. Roska v. Peterson, 328 F.3d 1230, 1251 (10th

5

Cir. 2003).

A clearly established right is one whose contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). Because knowledge that an action violates a clearly established statutory or constitutional right is required, the "essential inquiry is: would an objectively reasonable official have known that his conduct was unlawful?" Lawrence v. Reed, 406 F.3d 1224, 1230 (10th Cir. 2005). Warning against rights asserted at too high a level of generality, the Supreme Court has made clear that the relevant inquiry must be undertaken in the specific context of the case. Brosseau v. Haugen, 125 S.Ct. 596, 599 (2004). A plaintiff may not simply allege a Fourth Amendment violation in the abstract, but must demonstrate through relevant prior cases that a defendant's actions in a "more particularized sense" constitute a violation of a constitutional right. Id. at 599-600. "If the law at that time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation." Id. at 599.

**A**

With regard to the threshold issue of whether ADA Dobbs' conduct violated a constitutional right, we must first determine whether Douglas has a

6

constitutional right to privacy in her pharmacy prescription records. Our jurisprudence has made clear that "[t]here is a constitutional right to privacy in preventing disclosure by the government of personal matters." F.E.R. v. Valdez, 58 F.3d 1530, 1535 (10th Cir. 1995). In so deciding, we have interpreted the Supreme Court's decision in Whalen v. Roe, 429 U.S. 589 (1977), as creating a right to privacy in certain personal information. See Herring v. Keenan, 218 F.3d 1171, 1173 (10th Cir. 2000) ("This circuit, however, has repeatedly interpreted the Supreme Court's decision in Whalen v. Roe . . . as creating a right to privacy in the non-disclosure of personal information."). In Whalen, the Court considered whether the State of New York violated plaintiffs' liberty under the Fourteenth Amendment by collecting information about all prescriptions written for scheduled controlled substances. Although the Court held that New York's scheme did not violate a protected privacy interest, the Court noted that its cases protecting privacy have involved at least two related kinds of interests: "One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions." Whalen, 429 U.S. at 599-600. Because Douglas complains that her Fourth Amendment rights were violated by the disclosure of her pharmacy records, we are primarily concerned in the present case with the interest in avoiding disclosure of personal matters.

7

The scope of personal matters protected by a right to privacy has never been fully defined.  Supreme Court decisions "make it clear that the right has some extension to activities relating to marriage, procreation, contraception, family relationships, and child rearing and education."  Roe v. Wade, 410 U.S. 113, 152-153 (1973) (quotations and citations omitted); see also, Paul v. Davis, 424 U.S. 693, 713 (1976).  Because privacy regarding matters of health is closely intertwined with the activities afforded protection by the Supreme Court, we have held that "there is a constitutional right to privacy that protects an individual from the disclosure of information concerning a person's health."  Herring, 218 F.3d at 1173.  We have previously applied this right in the context of an employer's search of an employee's medical records, Lankford v. City of Hobart, 27 F.3d 477, 479 (10th Cir. 1994), and in the context of a government official's disclosure of a person's HIV status.  A.L.A. v. West Valley City, 26 F.3d 989 (10th Cir. 1994).

Although we have not extended the "zone of privacy" to include a person's prescription records, we have no difficulty concluding that protection of a right to privacy in a person's prescription drug records, which contain intimate facts of a personal nature, is sufficiently similar to other areas already protected within the ambit of privacy.  See, e.g., Griswold v. Connecticut, 381 U.S. 479, 484 (1965); Lankford, 27 F.3d at 479.  Information contained in prescription records not only

8

may reveal other facts about what illnesses a person has, but may reveal information relating to procreation – whether a woman is taking fertility medication for example – as well as information relating to contraception.  See Eisenstadt v. Baird, 405 U.S. 438, 453 (1972) ("If the right of privacy means anything, it is the right of the individual, married or single, to be free from unwarranted governmental intrusion into matters so fundamentally affecting a person as the decision whether to bear or beget a child."); Stidham v. Peace Officer Stds. & Training, 265 F.3d 1144, 1155 (10th Cir. 2001) (providing that disclosed information "must be highly personal or intimate" in order to receive constitutional privacy protection); Doe v. Southeastern Pennsylvania Transportation Authority, 72 F.3d 1133, 1138 (3rd Cir. 1995) (holding that "[a]n individual using prescription drugs has a right to expect that such information will customarily remain private.").  Thus, it seems clear that privacy in prescription records falls within a protected "zone of privacy" and is thus protected as a personal right either "fundamental" to or "implicit in the concept of ordered liberty."[3]  Palko v. Connecticut, 302 U.S. 319, 325 (1937); Roe, 410 U.S. at 152.

---

[3] This right to privacy is not absolute, however, as it is "well settled that the State has broad police powers in regulating the administration of drugs by the health professions."  Whalen, 429 U.S. at 603, n.30.  Thus, state law can operate to diminish the privacy expectation in prescription drug records, which in this case must be tempered by the fact that New Mexico apparently requires pharmacies to make these records available to law enforcement, presumably in

(continued...)

9

**B**

Having established that Douglas has a constitutional right to privacy in her prescription drug records, we must determine whether ADA Dobbs' conduct violated that right. Douglas argues that her right to privacy in her prescription medication records was violated when ADA Dobbs approved a proposed order Sergeant Spear used, after obtaining authorization from a court, to search Douglas's prescription records. That proposed Motion and Order, Douglas alleges, lacked sufficient indicia of probable cause, and that by approving its submission to a magistrate judge, Dobbs approved a warrantless search of her prescription records. Accordingly, Douglas fashions her claim against ADA Dobbs as a violation of her Fourth Amendment right to be free from an unreasonable search of her prescription records in which she has privacy interest. She asserts this violation against ADA Dobbs, not for the execution of a warrantless search, but for Dobbs' role in instructing Sergeant Spear with regard to the "Motion and Order to Produce Prescription Information" which he then used to obtain judicial authorization to execute the search.

Douglas cites to no statutory or case law to support her claim that the Fourth Amendment is implicated when district attorneys advise law enforcement

---

[3](...continued)
response to a duly authorized court order. See N.M. Stat. Ann. § 26-1-16(A, C, D).

officers about proposed motions or orders submitted to judges to obtain

authorization to conduct searches. Instead, she merely cites to <u>Katz v. United</u>

<u>States</u>, 389 U.S. 347, 351 (1967) for the general propositions that the Fourth

Amendment protects people not places, and that searches of private areas must be

made pursuant to warrants supported by probable cause. This citation, however,

fails to support an allegation that a district attorney violates a constitutional right

by the mere act of authorizing the submission of a Motion and proposed Order to

the magistrate judge for the requested issuance of an order approving a search.

Whether a warrant is required to conduct an investigatory search of prescription

records, in contrast to the regulatory disclosures at issue in <u>Whalen</u>, is an issue

that has not been settled, and is an issue we need not decide in the present case.[4]

Because Douglas cannot rely merely upon identifying an abstract right to privacy

protected by the Fourth Amendment and then allege that Dobbs has violated it,

she has failed to carry her burden under the threshold inquiry for qualified

immunity. See <u>Groh v. Ramirez</u>, 540 U.S. 551, 578 (2004) (foreclosing a

litigant's ability "to convert the rule of qualified immunity . . . into a rule of

virtually unqualified liability simply by alleging violation of extremely abstract

---

[4] We therefore do not address Douglas's argument that probable cause is required to search prescription records even though N.M. Stat. Ann. § 26-1-16(c) provides that "[i]t is the duty of all pharmacists to keep an accurate record of all disposals, which record shall be open to inspection by any law enforcement officer of this state."

rights") (quotation omitted); <u>Herring</u>, 218 F.3d at 1176 ("A plaintiff cannot simply identify a clearly established right in the abstract and allege that the defendant has violated it."). Absent a showing that Dobbs' actions in authorizing the submission of the Motion and proposed Order to the magistrate judge violated a clearly established constitutional right, qualified immunity applies and Douglas's suit must fail.

## III

Because Douglas has failed to demonstrate that Dobbs violated a clearly established constitutional right, we **AFFIRM**.

04-2118, *Douglas v. Dobbs*

**TYMKOVICH**, J., concurring in the judgment.

The questions presented by this case are whether the conduct of the assistant district attorney violated a Fourth Amendment right and, if so, whether that right was clearly established at the time of the search in question. We have previously held that persons have a due process right to the non-disclosure of personal medical information, *see Herring v. Keenan*, 218 F.3d 1171, 1175 (10th Cir. 2000); *F.E.R. v. Valdez*, 58 F.3d 1530, 1535 (10th Cir. 1995); *A.L.A. v. West Valley City*, 26 F.3d 989 (10th Cir. 1994); *Lankford v. City of Hobart*, 27 F.3d 477, 479 (10th Cir. 1994), and I believe that a search of a pharmacy for such information would implicate a legitimate expectation of privacy under our traditional Fourth Amendment jurisprudence. *See United States v. Thomas*, 372 F.3d 1173, 1176 (10th Cir. 2004) (citing *Minnesota v. Carter*, 525 U.S. 83, 87–88 (1998)).

Finding a legitimate expectation of privacy under the Fourth Amendment, however, leads to another question: Was the search here reasonable and not in violation of the Fourth Amendment in light of New Mexico's regulation of prescription drug vendors? This is a serious question about which other courts have reached varying conclusions in examining similar statutory schemes. *Compare United States v. Nechy*, 827 F.2d 1161, 1166 (7th Cir. 1987) (upholding

search of pharmacy not conducted pursuant to criminal warrant); *United States v. Jamieson-McKames Pharm., Inc.*, 651 F.2d 532, 541–42 (8th Cir. 1981) (upholding warrantless search of pharmaceutical business under closely regulated industry doctrine); *United States ex rel. Terraciano v. Montanye*, 493 F.2d 682 (2d Cir. 1974) (upholding warrantless search of pharmacy for prescription drug records); *Murphy v. State*, 62 P.3d 533 (Wash. Ct. App. 2003) (upholding warrantless search of customer's drug records); *State v. Russo*, 790 A.2d 1132 (Conn. 2002) (same); *State v. Welch*, 624 A.2d 1105 (Vt. 1992) (same), *with Murphy v. Townsend*, 187 F.3d 648, 1999 WL 439468 (9th Cir. 1999) (unpublished opinion) (affirming denial of qualified immunity to defendants on summary judgment because factual dispute existed as to whether defendants conducted warrantless search of customer's pharmacy records with intent to engage in criminal investigation); *United States v. Enserro*, 401 F. Supp. 460 (W.D.N.Y. 1975) (warrantless search of pharmacy illegal).

As the majority correctly concludes, however, we need not definitively answer this question today. The officer who conducted the search is not a party to this appeal. We are only reviewing the conduct of the assistant district attorney who approved a motion that the officer took to the New Mexico magistrate; the magistrate, in turn, issued an order under state law. Assuming for purposes of this case that both the officer and the assistant district attorney violated Douglas's

2

Fourth Amendment rights, I agree that the district court appropriately found the assistant district attorney is entitled to qualified immunity. Douglas has failed to cite to any precedent holding a district attorney liable in similar circumstances under the Fourth Amendment where a court issued an order under state law. Accordingly, I agree we must affirm the district court's grant of summary judgment.