KNOLL, Justice.
 

 |, This criminal case comes to us in a pretrial posture after the lower courts denied the defendant’s motion to suppress evidence the State seized purportedly pursuant to a subpoena duces tecum as provided in La.Code Crim. Proc. art. 66. Defendant is charged with violating La. Rev.Stat. 40:971 B(l)(i), obtaining a prescription for a controlled dangerous substance from a health care practitioner without disclosing the fact of an existing prescription for a controlled dangerous substance from another health care prac
 
 *1213
 
 titioner,
 
 ie.,
 
 “doctor shopping”. Upon receiving information from law enforcement that the defendant was suspected of obtaining prescriptions for the same drug from numerous doctors, the District Attorney filed a motion and proposed order for production of prescription records and a motion and proposed order for production of medical records, both purportedly under the authority of La.Code Crim. Proc. art. 66. The trial court granted both motions and signed the orders. The defendant sought the suppression of these records for,
 
 inter alia,
 
 being obtained without a warrant. For the following reasons we reverse the lower courts, finding the defendant had a reasonable expectation of privacy in her medical and prescription records such that a warrant was required for a search and seizure of these records for criminal investigative purposes.
 

 | .FACTS AND PROCEDURAL HISTORY
 

 Detective Jesse Taitano is employed by the Natchitoches City Police Department and is assigned to the Natchitoches Multi-Jurisdictional Drug Task Force (NMJDTF). On November 5, 2007, Det. Taitano was contacted by a pharmacist from Causey’s Pharmacy, who informed Det. Taitano that several doctors were giving defendant prescriptions for the same controlled dangerous substance (CDS), namely Alprazalom.
 
 [1]
 
 On November 7, 2007, the pharmacist at Rite-Aid informed Det. Taitano that the defendant was attempting to fill her prescription for Alpra-zalom twelve days early and that she was receiving prescriptions for this drug from multiple doctors at the hospital emergency room.
 

 Based upon this information, on November 8, 2007, the District Attorney, acting under the authority of La.Code Crim. Proc. art. 66 and representing that the NMJDTF was conducting an investigation involving forged prescriptions, moved for an order for eight local pharmacies to deliver to Det. Taitano “all original prescription records in the name of Mia Skinner” from April 1, 2007 through November 8, 2007. The district court issued an order to the eight pharmacies to deliver to Det. Taitano “all original prescription records” of the defendant for the dates requested.
 
 [2]
 
 On November 27, 2007, again acting under the authority of La. Code Crim. Proc. art. 66 and representing that the NMJDTF was conducting a narcotics investigation, the District Attorney sought “any and all medical records” regarding defendant from April 1, 2007 through November 27, 2007 from Natchitoches Regional Medical 1 .Center (NRMC). The district court issued an order
 
 [3]
 
 to NRMC to deliver to the
 
 *1214
 
 District Attorney’s office “any and all medical records” regarding the defendant for the dates requested.
 

 The District Attorney then filed a Bill of Information charging the defendant with two counts of obtaining a prescription for a CDS classified in Schedule IV (Alprazo-lam) in violation of “40:971(B)(l)(b)(i)”.
 
 [4]
 
 Det. Taitano testified at the preliminary hearing that although the court had issued an order for NRMC to release the defendant’s medical records, there were no such records. Det. Taitano apparently did receive the defendant’s prescription records in response to the court order.
 

 Averring the information was obtamed without a medical release pursuant to La. Rev.Stat. 13:3715.1 and without a search warrant, defendant moved to suppress the evidence. The trial court denied the motion. In written reasons, the trial court noted that in response to the District Attorney’s motion pursuant to La.Code Crim. Proc. art. 66, the court issued an order, not a subpoena, and that service was not made by the Sheriff or in compliance with La. Code Crim. Proc. art. 734. The court Ladditionally observed that the provisions of La.Rev.Stat. 13:3715.1 were not followed in that the pharmacies were not given affidavits that attested to why the subpoenas were issued, nor was seven days notice given to the defendant prior to obtaining the records.
 
 [5]
 

 The trial court first found the remedy for the obtaining of evidence in violation of
 
 *1215
 
 La.Rev.Stat. 13:3715.1 was not suppression of the evidence before trial, but that the evidence is inadmissible at trial. The trial court relied upon
 
 State v. Downs,
 
 04-2402 (La. Ct.App. 1 Cir. 9/23/05), 923 So.2d 726, which cited with approval
 
 State v. Mullins,
 
 537 So.2d 386 (La. Ct.App. 4 Cir.1988), wherein that court held that the State could not introduce at trial medical records obtained without following the formalities of La.Rev.Stat. 13:3715.1. The trial court determined that the records obtained by the District Attorney were inadmissible at any trial of the defendant unless a second subpoena was issued that followed the requirements of La.Rev.Stat. 13:3715.1. Moreover, the trial court found the rule expressed in
 
 Downs
 
 and
 
 Mullins
 
 is equally applicable to subpoenas obtained not in conformity with La.Code Crim. Proc. art. 66. Although it was clear the clerk of court did not issue the subpoenas as 15required by Article 66, the trial court held the remedy is not suppression, but that the evidence is inadmissible at trial unless a valid, conforming subpoena is issued.
 

 Finally, the trial court found that
 
 State v. Lee,
 
 05-2098, p. 20 (La.1/16/08), 976 So.2d 109, 125,
 
 cert. denied,
 
 — U.S. -, 129 S.Ct. 143, 172 L.Ed.2d 39 (2008), which held the State could not circumvent the probable cause requirement for a DNA search of the accused by using an Article 66 subpoena, was distinguishable because
 
 Lee
 
 dealt with a search of the individual defendant while this case concerns a “subpoena [order] directed to third party business entities that were not accused of or under investigation for a crime.” The trial court decided that only reasonable grounds for investigative purposes, as provided in Article 66, are required for a “D.A. subpoena”, as opposed to the probable cause that is required for a warrant.
 

 A divided panel of the court of appeal denied the defendant’s writ. However, Judge Roy,
 
 pro tempore,
 
 vigorously dissented, noting that the protections guaranteed by La. Const. Art. I, § 5 are significantly broader in scope and intent than those contained in the Constitution of the United States. In his view, failing to suppress the evidence gives carte blanche to investigating agencies to engage in “fishing expeditions” into the most private, sensitive medical information, which could later be used as the basis for probable cause warrants, essentially circumventing fundamental, constitutional rights.
 

 We granted the defendant’s writ in order to address whether Louisiana’s citizens have a reasonable expectation of privacy in their pharmaceutical prescription and medical records such that a warrant is required for a search of those records in a criminal investigation.
 

 ^DISCUSSION
 

 The Fourth Amendment, applicable to the states through the Fourteenth Amendment, provides that “[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated....” U.S. Const, amend. IV;
 
 See, Mapp v. Ohio,
 
 367 U.S. 643, 655, 81 S.Ct. 1684, 1691, 6 L.Ed.2d 1081 (1961). Louisiana provides protection not only against unreasonable
 
 searches
 
 and
 
 seizures,
 
 but our Constitution explicitly protects against unreasonable invasions of
 
 privacy.
 
 La. Const. Art. I, § 5 provides “[e]very person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy.... ” Federal and state constitutional protections against unreasonable searches exist only when an individual has an actual expectation of privacy that society is prepared to recognize
 
 *1216
 
 as reasonable.
 
 Katz v. United States,
 
 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967) (Harlan, J. concurring);
 
 State v. Ragsdale,
 
 381 So.2d 492, 497 (La.1980).
 

 The reasonable expectation of privacy in medical
 
 [6]
 
 and prescription records is
 
 res nova
 
 to this Court. Accordingly, we find it appropriate to look to decisions of the federal courts to examine their determinations of the contours of privacy in medical and prescription records.
 

 The United States Supreme Court, in
 
 Whalen v. Roe,
 
 429 U.S. 589, 599, 97 S.Ct. 869, 876, 51 L.Ed.2d 64 (1977), noted that the right to privacy involves at least two different kinds of interests. One is the individual’s interest in avoiding disclosure of personal matters and the other is the interest in independence in making certain |7kinds of important decisions.
 
 Id.,
 
 429 U.S. at 599-600, 97 S.Ct. at 876. The two kinds of privacy interests identified in
 
 Whalen
 
 may be characterized as the “confidentiality” and “autonomy” branches of the constitutional right of privacy.
 
 Borucki v. Ryan,
 
 827 F.2d 836, 840 (1st Cir.1987);
 
 see, e.g., Plante v. Gonzalez,
 
 575 F.2d 1119, 1128 (5th Cir.1978),
 
 cert. denied,
 
 439 U.S. 1129, 99 S.Ct. 1047, 59 L.Ed.2d 90 (1978).
 

 The
 
 Whalen
 
 court was presented with the argument that a New York statute, which required prescriptions for drugs that had been classified “Schedule II” to be forwarded to the New York State Department of Health,
 
 [7]
 
 invaded a constitutionally protected zone of privacy. The official prescription form identified the prescribing physician, the dispensing pharmacy, the drug and dosage, and the name, address and age of the patient. After noting that public disclosure could occur in three ways, the Supreme Court found the statute did not facially pose a sufficiently grievous threat to either privacy interest to establish a constitutional violation.
 
 [8]
 

 Whalen,
 
 429 U.S. at 601, 97 S.Ct. at 877. For our purposes, it is significant the Supreme Court noted that one of the ways in which disclosure of the information could occur was the situation of a doctor or a patient being accused of a violation and the stored data being offered in evidence in a judicial proceeding. Finding this possibility insufficient to hold the statute facially unconstitutional, the Supreme Court wrote “the remote possibility that judicial supervision of the evidentiary use of particular items of stored information |swill provide inadequate protection against unwarranted disclosure is surely not a sufficient reason for invalidating the entire patient-identification program.”
 
 Whalen,
 
 429 U.S. at 601-602, 97 S.Ct. at 877. The requirement of disclosures to a state agency having responsibility for the health of the community did not automatically amount to an
 
 *1217
 
 impermissible invasion of privacy.
 
 Whalen,
 
 429 U.S. at 602, 97 S.Ct. at 878. Notably, however, the Court held individuals do have a limited right to privacy in their medical records.
 

 More importantly, the Court’s decision holding the regulatory scheme was not facially unconstitutional was explicitly based upon the Fourteenth Amendment’s concept of personal liberty and restrictions upon state action,
 
 Whalen,
 
 429 U.S. at 604, 97 S.Ct. at 878; the Court explicitly distinguished Fourth Amendment privacy interests from Fourteenth Amendment privacy interests.
 
 Whalen,
 
 429 U.S. at 598 n. 23, 97 S.Ct. at 876; 429 U.S. at 599 n. 24, 97 S.Ct. at 876. The Court noted that the right of the individual to be free in his private affairs from governmental surveillance and intrusion is a constitutional right directly protected by the Fourth Amendment.
 
 Whalen,
 
 429 U.S. at 600 n. 24, 97 S.Ct. at 876. In response to the Roe plaintiffs’ argument that their Fourth Amendment privacy interest was invaded by New York’s regulatory statute, the Court explicitly declined to extend the Fourth Amendment’s privacy interest to that situation which did
 
 not
 
 involve “affirmative, unannounced, narrowly focused intrusions into individual privacy during the course of criminal investigations.”
 
 Whalen,
 
 429 U.S. at 604 n. 32, 97 S.Ct. at 878.
 

 A majority of the federal Circuit Courts of Appeals have concluded the constitutional right to privacy extends to medical and/or prescription records.
 
 Douglas v. Dobbs,
 
 419 F.3d 1097, 1102 (10th Cir.2005) (constitutional right to privacy in prescription drug records),
 
 cert. denied,
 
 546 U.S. 1138, 126 S.Ct. 1147, 163 L.Ed.2d 1001 (2006);
 
 Herring v. Keenan,
 
 218 F.3d 1171, 1175 (10th Cir.2000),
 
 cert. denied,
 
 534 U.S. 840, 122 S.Ct. 96, 151 L.Ed.2d 56 (2001);
 
 Doe v. Southeastern Pennsylvania Trans. Auth.,
 
 72 F.3d 1133, 1137 (3d Cir.1995),
 
 cert. denied,
 
 519 U.S. 808, 117 S.Ct. 51, 136 L.Ed.2d 15 (1996);
 
 Anderson v. Romero,
 
 72 F.3d 518, 522 (7th Cir.1995);
 
 Doe v. New York,
 
 15 F.3d 264, 267 (2d Cir.1994);
 
 Doe v. Attorney General of the United States,
 
 941 F.2d 780, 795-796 (9th Cir.1991),
 
 vacated on other grounds sub nom. Reno v. Doe,
 
 518 U.S. 1014, 116 S.Ct. 2543, 135 L.Ed.2d 1064 (1996);
 
 see also Harris v. Thigpen,
 
 941 F.2d 1495, 1513 (11th Cir.1991)(assuming such right exists).
 
 Contra Jarvis v. Wellman,
 
 52 F.3d 125, 126 (6th Cir.1995) (holding that constitutional right of privacy does not apply to medical records). As noted by the United States Tenth Circuit Court of Appeals, information contained in prescription records may not only reveal facts about what illnesses a person has, but may reveal information relating to procreation, such as fertility medication or contraceptives.
 
 Douglas,
 
 419 F.3d at 1102.
 

 We are cognizant that the issue of whether a warrant is required to conduct an investigatory search of prescription records, in contrast to the regulatory disclosures at issue in
 
 Whalen,
 
 is one that has not been settled.
 
 Douglas v. Dobbs,
 
 419 F.3d 1097, 1103 (10th Cir.2005).
 
 [9]
 
 Never
 
 *1218
 
 theless, we do not find that
 
 Whalen’s
 
 upholding of a regulatory scheme for the monitoring of prescriptions for controlled substances | indiminishes a person’s Fourth Amendment privacy interest to permit warrantless governmental intrusion during the course of a criminal investigation.
 

 Considering the federal jurisprudence and Louisiana’s constitutional requirement of a heightened privacy interest for its citizens, we find that the right to privacy in one’s medical and prescription records is an expectation of privacy that society is prepared to recognize as reasonable. Therefore, absent the narrowly drawn exceptions permitting warrantless searches, we hold a warrant is required to conduct an investigatory search of medical and/or prescription records. We are not prepared to extend
 
 Whalen,
 
 which balanced the individual’s privacy interest against the state’s reasonable exercise of its regulatory power, to find Louisiana allows warrantless searches and seizures of its citizens’ medical and pharmacy records for criminal investigative purposes.
 

 Because we find a warrant was required for an investigative search of the defendant’s prescription and medical records, the trial court erred in finding the remedy was for the State to comply with requirements of La. Code Crim Proc. art. 66 and La Rev. Stat. 13:3715.1, which the State had admittedly failed to comply with in obtaining the defendant’s prescription and medical records, in order for these records to be admissible at trial. The trial court’s ruling essentially permits the State to re-subpoena the prescription and medical records, allowing the State to introduce them at trial if the State has followed all the' procedural requirements of La.Rev.Stat. 13:3715.1 and/or La.Code Crim. Proc. art. 66 in procuring these records a second time. However, because we find the Fourth Amendment and La. Const, art. I, § 5 require a search warrant before a search of prescription and medical records for criminal investigative purposes is permitted, the State cannot cure its warrant-less search and seizure of the records by a second subpoena of these records.
 

 InA search warrant for property where one has a reasonable expectation of privacy may issue only upon probable cause established to the satisfaction of a magistrate, by the affidavit of a credible person, particularly describing the person or place to be searched and the things to be seized. La. Const, art. I, § 5; La Code Crim. Proc. art. 162. The procedural requirements of La.Rev.Stat. 13:3715.1 simply and clearly do not suffice to comply with the constitutional requirements of probable cause supported by a sworn affidavit for the issuance of a search warrant. Thus, it is irrelevant whether or not the State complied with the requirements of La.Rev.Stat. 13:3715.1, and any subsequent compliance with its procedural requirements is insufficient to permit the introduction of evidence that was illegally searched and seized. This evidence must be suppressed.
 

 Additionally, the trial court erred in distinguishing
 
 State v. Lee,
 
 05-2098 (La.1/16/08), 976 So.2d 109, from the instant matter where the State attempted to use Article 66 subpoenas to obtain the defendant’s prescription and medical records. Although the attempted subpoenas were directed to third party business enti
 
 *1219
 
 ties that were not under investigation for a crime, the attempted subpoenas sought the prescription and medical records of the defendant, who had a reasonable expectation of privacy in these records. Because we have determined the defendant had a right of privacy in these records, they could only be searched and seized pursuant to a warrant. Under these circumstances, an Article 66 subpoena was inappropriate because the reasonable expectation of privacy required a legal search and seizure, which can only be done pursuant to a search warrant; this implicates the warrant requirement and its narrow circumstance exceptions.
 

 | ^CONCLUSION
 

 For the foregoing reasons, we find the lower courts erred in denying the defendant’s motion to suppress the prescription records obtained without a warrant. We hold that a right to privacy in one’s medical and prescription records is an expectation of privacy that society is prepared to recognize as reasonable. Therefore, a warrant is required to conduct a search and seizure of such records for criminal investigative purposes.
 

 DECREE
 

 The judgment of the lower courts are reversed. This case is remanded to the trial court for further proceedings consistent with the views expressed in this opinion.
 

 REVERSED and REMANDED.
 

 [1]
 

 . Alprazalom is a Schedule IV CDS, pursuant to La.Rev.Stat. 40:964. Alprazalom is the generic form of Xanax.
 
 Drug Facts and Comparisons 2009,
 
 p. 1306 (2009).
 

 [2]
 

 . The eight pharmacies were Brookshire’s Pharmacy, Cade’s Pharmacy, Causey's Pharmacy, Gardiner’s Pharmacy, Rite-Aid Pharmacy, University Pharmacy, Walgreen's Pharmacy and Wal-Mart Pharmacy.
 

 [3]
 

 . La.Code Crim. Proc. art. 66 provides that upon written motion of the attorney general or district attorney, the court may order the clerk to issue subpoenas or subpoenas duces tecum, which are then to be served by any commissioned investigator from the attorney general’s office or in conformity with La.Code Crim. Proc. art. 734. In this matter before us, no subpoenas duces tecum were issued by the clerk. Rather, the court merely issued an order for the pharmacies to deliver the records to Det. Taitano and an order for NRMC to deliver the records to the District Attorney’s office. Although the correct procedure was not followed, this is of no moment for our disposition of this case, because we find merit in defendant’s argument that it was error to search and seize the evidence without a warrant.
 

 [4]
 

 . We note that subparagraphs (B)(1)(b) and (B)(l)(i) constitute different offenses. Sub-paragraph (B)(1)(b) prohibits acquiring or obtaining possession of a CDS by misrepresentation, fraud, forgery, deception or subterfuge. Subparagraph (B)(l)(i) prohibits obtaining or seeking to obtain a CDS or a prescription for a CDS from a health care practitioner, while being supplied with any CDS or a prescription for any CDS by another health care practitioner, without disclosing the fact of the existing prescription to the practitioner from whom the subsequent prescription is sought, more commonly called "doctor shopping”. It is unclear from this Bill of Information if defendant is charged with violating both of these subparagraphs; however, for purposes of this opinion that is not relevant. The affidavit filed for the arrest warrant, the transcript of the preliminary examination, and the State’s brief filed with this Court all indicate the State was prosecuting the defendant for violating La.Rev.Stat. 40:971 B(l)(i),
 
 i.e.,
 
 "doctor shopping”.
 

 [5]
 

 . La.Rev.Stat. 13:3715.1 provides, in relevant part:
 

 [[Image here]]
 

 B. The exclusive method by which medical, hospital, or other records relating to a person's medical treatment, history, or condition may be obtained or disclosed by a health care provider, shall be pursuant to and in accordance with the provisions of R.S. 40:1299.96 or Code of Evidence Article 510, or a lawful subpoena or court order obtained in the following manner: (1) A health care provider shall disclose records of a patient who is a party to litigation pursuant to a subpoena issued in that litigation, whether for purposes of deposition or for trial and whether issued in a civil, criminal, workers' compensation, or other proceeding, but only if: the health care provider has received an affidavit of the party or the party's attorney at whose request the subpoena has been issued that attests to the fact that such subpoena is for the records of a party to the litigation and that notice of the subpoena has been mailed by registered or certified mail to the patient whose records are sought, or, if represented, to his counsel of record, at least seven days prior to the issuance of the subpoena; and the subpoena is served on the health care provider at least seven days prior to the date on which the records are to be disclosed, and the health care provider has not received a copy of a petition or motion indicating that the patient has taken legal action to restrain the release of the records. If the requesting party is the patient or, if represented, the attorney for the patient, the affidavit shall state that the patient authorizes the release of the records pursuant to the subpoena. No such subpoena shall be issued by any clerk unless the required affidavit is included with the request.
 

 [6]
 

 . Although NRMC had no medical records to produce, we will address the reasonable expectation of privacy,
 
 vel non,
 
 in medical records as the State sought to obtain the defendant's medical records without a warrant.
 

 [7]
 

 . The statute at issue, portions of the New York State Controlled Substances Act of 1972, N.Y.Pub. Health Law § 3300
 
 et seq.
 
 (McKinney, Supp. 1976-1977) is New York’s version of the Uniform Controlled Substances Act. Louisiana’s version of the Uniform Controlled Substances Act is found at Title 40, Chapter 4, PartX, La.Rev.Stat. 40:961 to 40:995.
 

 [8]
 

 .The other two possible means of public disclosure were (1) failure of the Health Department employees to maintain proper security, either deliberately or negligently, or (2) that a doctor, pharmacist or the patient could voluntarily reveal information on a prescription form. The Court found this second possibility existed under the prior law, and, with regard to the first possibility, that there was no support in the record or the experience of die two states New York had emulated for an assumption that the security provisions of the statute would be administered improperly.
 
 Whalen,
 
 429 U.S. at 600-601, 97 S.Ct. at 877.
 

 [9]
 

 . Although observing the issue was not settled, that court additionally noted that was an issue it need not decide in that case.
 
 Douglas,
 
 419 F.3d at 1103. Douglas had filed an action pursuant to 42 U.S.C. § 1983 alleging her right to privacy was violated by a police search of her pharmacy prescription records executed pursuant to a court order. Although the court found Douglas had a constitutional right to privacy in her prescription records, Douglas failed to carry her burden of showing that the assistant district attorney’s action violated a clearly established constitutional right and therefore, qualified immunity applied.
 
 Id.
 
 A police sergeant prepared a "Motion and Order to Produce Prescription Information" for the purpose of acquiring Douglas's prescription records from a pharmacy. The ADA "approved the form of the motion and order.” Absent a showing that the ADA's action in
 
 *1218
 
 authorizing the submission of the motion and proposed order to the magistrate violated a clearly established constitutional right, qualified immunity applied. Douglas lacked support for her claim that the Fourth Amendment is implicated by an ADA’s mere act of authorizing the submission of a motion and proposed order to the magistrate for the requested issuance of an order approving a search.
 
 Id.