ALARCÓN, Circuit Judge.
Kathleen Keenan (“Keenan”), a federal probation officer, appeals from the order denying her motion to dismiss the claims filed against her by Frederick Herring (“Herring”).[1] Herring alleged in his complaint, filed pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), that Keenan violated his federal constitutional right to privacy by stating to his sister, and the manager and acting director of the restaurant where he was employed as a waiter, that Herring had tested positive to human immunodeficiency virus (“HIV”). At the time of the disclosure, Herring was serving a period of probation under Keenan’s supervision. The district court rejected *1173 Keenan’s contention that she was'entitled to qualified immunity because she did not violate a clearly established constitutional right. We conclude that there is a constitutional right to privacy that protects an individual from the disclosure of information concerning a person’s health. We reverse the denial of the motion to dismiss, however, because we hold that it was not clearly established, at the time Keenan disclosed to Herring’s sister and his employer that Herring had tested-positive for HIV, that a probationer had a constitutionally protected right to privacy regarding information concerning his or ‘her medical condition.
I
Because we are reviewing the denial of a motion to dismiss pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure, “we must accept all of the well pleaded allegations in the complaint as true.” Tonkovich v. Kansas Bd. of Regents, 159 F.3d 504, 510 (10th Cir.1998). The following facts are alleged in the second amended complaint.
On or about September of 1993, Herring began serving a period of probation under Keenan’s supervision following his conviction for driving while intoxicated on federal property. On or about December 22, 1993, Herring met Keenan as required by the terms of his probation. During their meeting, Herring informed Keenan that he had recently taken an HIV test and he thought he might be infected with the virus. Herring had not received the results of the HIV test at the time of this conversation. At no time did he inform Keenan that the results of the HIV test were positive. Herring did not authorize Keenan to disclose this information to anyone. On the date he disclosed this information to Keenan, Herring was employed as a waiter at the 50’s Café, a restaurant at the Lowry Air Force Base Recreation Center in Denver, Colorado.
Following the December 1993 meeting, Keenan informed Candice Clark, the manager of the 50’s Café, that Herring was HIV positive. Keenan repeatedly stated to- Candice Clark that Herring should be terminated from his position.
In a telephone conversation with Sylvia Herring, Herring’s sister, Keenan told her that Herring had been tested for HIV and/or was HIV positive. Prior to Keenan’s disclosure, Sylvia Herring was - unaware that her brother had been tested for HIV or might be HIV positive.
On or about January 10, 1994, Keenan informed John Casey, the acting director of the 50’s Café, that Herring was. HIV positive. She demanded that Herring be fired because she believed that Colorado law prohibited a person who has tested as HIV positive from working in a food preparation position.
The complaint also alleges that:
Defendants’ conduct was in blatant violation. of Volume X, Sec. 16 D and F of the Guide to Judiciary Policies and Procedures which provides that probation officers “should not disclose HIV infection or illness information to the offender’s family members, parents, or sexual/drug partners, without the offender’s informed, written consent” and that “notification of other third parties is the responsibility of the exposed person.”
II
Herring filed this action on December 21, 1995, in the district court. He alleged that-Keenan’s disclosures violated his constitutional right to privacy, and his statutory right to be protected from disclosure of a record pursuant to the Privacy Act, 5 U.S.C. § 552(b). Herring died on July 23, 1996. Sylvia Herring was appointed the personal representative of Herring’s estate on or about October 16,1996.
As Herring’s personal representative, Ms. Herring filed a second amended complaint against Keenan on December 9, 1996. In the second amended complaint, Ms. Herring (“the plaintiff’) alleged that Keenan’s disclosures violated Herring’s constitutional right to privacy, constituted cruel and unusual punishment in violation *1174 of the Eighth Amendment, and deprived Herring of his liberty without due process of law in violation of the Fifth Amendment. In the second amended complaint, the plaintiff prayed for damages and a declaration of his constitutional rights.
Keenan filed a motion to dismiss the second amended complaint on January 24, 1997, pursuant to Rule 12(b)(1) and Rule 12(b)(6) in which she asserted the defense of qualified immunity. She argued that the second amended complaint should be dismissed because it fails to allege that Keenan engaged in conduct that violated clearly established law. On January 8, 1999, the district court referred the motion to dismiss to a magistrate judge for a report and recommendation regarding whether the facts alleged in the second amended complaint demonstrated that Keenan’s disclosures violated clearly established law.
The magistrate judge submitted his report and recommendation on February 24, 1999. He recommended that the motion to dismiss should be granted on two grounds. First, the second amended complaint failed “to present factual allegations which would demonstrate that Keenan’s disclosures were not supported by a compelling interest.” Second, “in late 1993, the contours of the right of privacy were not sufficiently clear to place a probation officer on notice that disclosure of a probationer’s HIV test or HIV status to his employer and his close relative would violate this right.”[2] The magistrate judge also noted that “[n]o decision of the United States Supreme Court or the United States Court of Appeals for the Tenth Circuit has specifically considered the parameters of the constitutional right to privacy in the context of the limited governmental disclosure of one’s HIV status.”[3]
On May 5, 1999, the district court entered its order denying Keenan’s motion to dismiss the right to privacy claim. The court dismissed with prejudice Herring’s Eighth Amendment claim, and his claim that Keenan's disclosures deprived him of his liberty without due process of law. The district court also dismissed the request for a declaratory judgment.
The district court held that the allegations in the second amended complaint that Keenan had violated the guidelines for probation officers for supervising probationers exposed to HIV were sufficient to satisfy the plaintiffs burden of demonstrating that the disclosures were not supported by a compelling interest. The district court also held that this court’s decisions in Eastwood v. Department of Corrections of State of Okla., 846 F.2d 627 (10th Cir.1988), and Lankford v. City of Hobart, 27 F.3d 477 (10th Cir.1994), demonstrate that “the contours of the constitutional right to privacy as it relates to dissemination of one’s actual or potential HIV status were clearly established in late 1993.”
Keenan filed this timely interlocutory appeal on June 3,1999. “A defendant may immediately appeal the denial of a 12(b)(6) motion based on qualified immunity to the extent it turns on an issue of law.” Prager v. LaFaver, 180 F.3d 1185, 1190 (10th Cir.1999) (citing Behrens v. Pelletier, 516 U.S. 299, 307, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996)).
Ill
Keenan contends that the district court erred in rejecting her qualified immunity defense because “[a]t the time of the alleged disclosures in this case, there were no Supreme Court or Tenth Circuit *1175 decisions addressing whether limited disclosure of information regarding a probationer’s HIV status fell within a clearly established constitutional right of privacy.” This court reviews the denial of a motion to dismiss de novo. Prager, 180 F.3d at 1190.
The Supreme Court has instructed that in reviewing the denial of a claim of qualified immunity, “a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established.” Conn v. Gabbert, 526 U.S. 286, 290, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999). “To overcome the qualified immunity defense, the plaintiff must identify a clearly established statutory or constitutional right of which a reasonable person would have known, and then allege facts to show that the defendant’s conduct violated that right.” Breidenbach v. Bolish, 126 F.3d 1288, 1291 (10th Cir.1997).
A
The second amended complaint alleges that Keenan violated Herring’s right to privacy by disclosing information regarding his HIV status to his sister and his employer. Our threshold question, therefore, is whether there is a constitutional right to privacy that protects information concerning a person’s health from being disclosed to others by government officials. Keenan contends that there is no clear right to privacy in the non-disclosure of such personal information because the Supreme Court has never directly held that such a right exists. This circuit, however, has repeatedly interpreted the Supreme Court’s decision in Whalen v. Roe, 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977), as creating a right to privacy in the non-disclosure of personal information. See e.g., Slayton v. Willingham, 726 F.2d 631, 635 (10th Cir.1984) (holding that the Supreme Court explicitly recognized the constitutional right to privacy in Whalen v. Roe); Mangels v. Pena, 789 F.2d 836, 839 (10th Cir.1986) (“Due process thus implies an assurance of confidentiality with respect to certain forms of personal information possessed by the state.”); Eastwood, 846 F.2d at 630-31 (10th Cir.1988) (“This penumbra [of a variety of provisions in the Bill of Rights] protects two kinds of privacy interests: the individual’s interest in avoiding disclosure of personal matters and the interest in being independent when making certain kinds of personal decisions.”); Flanagan v. Munger, 890 F.2d 1557, 1570 (10th Cir.1989) (“The Supreme Court has recognized that the constitutional right to ¡privacy protects an individual’s interest in preventing disclosure by the government of personal matters.”)
This court’s 1994 decision in A.L.A. v. West Valley City, 26 F.3d 989 (10th Cir.1994), is the first case in this circuit that recognized that there is a constitutional right to privacy regarding disclosure by a police officer of the results of an arrestee’s HIV test. Id. at 990-91. In so holding, this court stated: “There is no dispute that confidential medical information is entitled to constitutional privacy protection.” Id. at 990. When the plaintiff in A.L.A. was arrested, he had a piece of paper in his wallet that indicated he had tested positive for HIV. Id. The district court granted summary judgment on the basis that the plaintiff lacked standing because a subsequent test disclosed that he had never been infected with HIV. Id. This court reversed and held that the plaintiff had standing, reasoning that the actual validity of. the test was “entirely irrelevant to whether he has a reasonable expectation of privacy in the results.” Id. Based on the foregoing Tenth Circuit authority, we conclude that Herring alleged a violation of a constitutional right to privacy in the nondisclosure of information regarding one’s HIV status by a government official.
B
Even though a plaintiff correctly alleges a violation of a constitutional right, he or she has the burden of demonstrating that the law was clearly established at the time of the deprivation of that right. See *1176 Hilliard v. City and County of Denver, 930 F.2d 1516, 1518 (10th Cir.1991). A plaintiff “cannot simply identify a clearly established right in the abstract and allege that the defendant has violated it.” See id. “The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.” Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).
To determine whether the contours of the right to privacy in this matter were sufficiently clear in late 1993, we must consider whether there was sufficient correspondence between Keenan’s conduct and the prior law establishing the right to non-disclosure of personal matters by a government officer. See Hilliard, 930 F.2d at 1518 (requiring a substantial correspondence between the conduct and prior case law); Eastwood, 846 F.2d at 630 (requiring “some but not precise factual correspondence.”). A plaintiff need not demonstrate that the specific conduct in this case had previously been held unlawful, so long as the unlawfulness was “apparent.” See Hilliard, 930 F.2d at 1518. A plaintiff may satisfy his or her burden by showing that there is a Supreme Court or Tenth Circuit opinion on point, or that his or her proposition is supported by the weight of authority from other courts. Anaya v. Crossroads Managed Care Systems, Inc., 195 F.3d 584, 594 (10th Cir.1999).
While A.L.A. is clear authority for the principle that under certain circumstances the disclosure of an individual’s HIV status may violate a constitutional privacy protection, it was decided in 1994, after Keenan’s disclosures in this matter.[4] Furthermore, it does not answer the question whether, in 1993, a probation officer violated clearly established law by disclosing to a close relative and a restaurant employer of a probationer that he had tested positive for HIV. The parties have not cited a case, nor has our research disclosed any Supreme Court or Tenth Circuit decision that has addressed this question.
Though the Supreme Court has not addressed the question whether the right to privacy applies to a limited disclosure of a probationer’s HIV status to his or her sister or restaurant employer, the Court has distinguished between the rights available to an ordinary citizen under the Fourth Amendment, and the privacy rights of a probationer. Griffin v. Wisconsin, 483 U.S. 868, 873-875, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987). In Griffin, the Court reasoned that probation “[supervi-sión, then, is a ‘special need’ of the State permitting a degree of impingement on privacy that would not be constitutional if applied to the public at large.” Id. at 875, 107 S.Ct. 3164. The Court upheld a state regulation permitting the search of a probationer without a warrant or probable cause. Id. at 875-76, 107 S.Ct. 3164. In view of the fact that it was clearly established in Griffin that a probationer’s right to privacy is limited, without further guidance from the Supreme Court or this circuit, a reasonable probation officer in late 1993 could not be presumed to know whether a limited disclosure of a probationer’s HIV status to his sister and restaurant employer would violate a probationer’s constitutional rights.
In rejecting the magistrate judge’s recommendation to dismiss the action, the district court stated that “Eastwood and Lankford clearly establish a right to privacy” regarding information concerning a person’s HIV status. The district court held that “it was Ms. Keenan’s responsibil *1177 ity ‘to relate established law to analogous factual settings.’ ” Quoting Eastwood, 846 F.2d at 630. Since Lankford was not decided until June 14, 1994, Keenan could not have related the holding in Lankford to the question whether disclosing to Herring’s sister and his employer that Herring was HIV positive violated his constitutionally protected right to privacy. Though Eastivood was an available source in 1993 for a reasonable government officer seeking “analogous factual settings,” in order to avoid intruding on an individual’s constitutional right to privacy, the facts alleged in the complaint in Eastwood bear no resemblance to the conduct attributed to Keenan in this matter.
In Eastwood, the plaintiff, an employee of the Oklahoma Department of Corrections (“DOC”), sought damages pursuant to 42 U.S.C. § 1983 against fellow DOC employees for violating her right to privacy, and sexually Harassing her, resulting in “an offensive work environment.” 846 F.2d at 630. Eastwood’s complaint alleged that (1) a DOC investigator forced her to answer a number of embarrassing questions about her sexual history; (2) DOC employees published “offensive and insulting drawings of her within the DOC facility;” and (3) DOC employees repeatedly made “insulting and offensive remarks” about her. Id. at 630-31. In response to these allegations, the DOC employees argued that -the questions concerning the plaintiffs sexual history were designed to test the validity of her complaint that she had been sexually assaulted and molested by a DOC employee who had put a drug into her drink to cause her to lose consciousness. Id. at 631. This court concluded that a trier of fact could find, instead, that the defendants’ motive in forcing her to reveal her prior sexual history, and their subsequent conduct, including the publication of offensive drawings, was “to harass plaintiff into dismissing the complaint and quitting her job.” Id. at 631. Based on this analysis of the facts alleged in the complaint, this court affirmed the district court’s order denying the motion to dismiss [on the basis of qualified immunity.] Id.
The dispositive facts relied upon by the court in Eastwood are in stark contrast to those alleged in the second amended complaint. Eastwood was a state employee, free from any restrictions on her federal constitutional rights. Herring was a probationer subject to some limitations on his constitutional rights because .of his status. Eastwood was forced by a DOC investigator to disclose .information about her sexual history, ostensibly to verify her accusation of sexual harassment by a fellow employee. Herring voluntarily informed his probation officer that he had taken an HIV test and believed that he might be infected with that virus. This court concluded that the fact that Eastwood’s fellow employees published offensive and insulting drawings within DOC facilities, and made insulting and offensive remarks concerning her, supported an inference that the DOC defendants’ motive was to create a hostile work environment in order to harass her into withdrawing her complaint and terminating her employment. Herring did not allege any facts showing that Keenan had a comparable, improper motive in her limited disclosures concerning Herring’s medical condition. To the contrary, the second amended complaint alleges facts that demonstrate that Keenan’s sole purpose was to protect others from being accidentally exposed to HIV. The plaintiff alleged in the second amended complaint that Keenan disclosed Herring’s medical condition to his employer, and requested that Herring be discharged, because she believed that it was unlawful under Colorado law for a restaurant to employ a person as a waiter who has tested positive for HIV.
There is no substantial correspondence between Keenan’s limited disclosure to Herring’s sister and his employer of personal medical information volunteered to her by Herring and the conduct of the DOC investigator in Eastwood in forcing a fellow employee to reveal information *1178 about her prior sexual history as part of a sexual harassment campaign to induce her to quit her job. 846 F.2d at 631. Furthermore, even if we were to agree with the plaintiff that this court’s holding in Lankford applies to conduct committed prior to the publication of that decision in 1994, that matter involved the seizure from a local hospital by a police chief of private medical records of a police dispatcher in order to prove that she was a lesbian. 27 F.3d at 479. No comparable abuse of authority occurred in the matter sub judice. Herring voluntarily disclosed medical information to his probation officer, who in turn disclosed the information under the belief that it was against Colorado law for an HIV positive person to be employed as a waiter in a restaurant.
The district court’s reliance on Mangels v. Pena, 789 F.2d 836 (10th Cir.1986), is also misplaced. Though this court recognized in Mangels that information of an intimate or otherwise personal nature may be constitutionally protected, this court concluded that the plaintiffs had no legitimate expectation of privacy and that their constitutional rights were not violated. In Mangels, the plaintiffs, two fire fighters employed by the Denver Fire Department, brought an action under 42 U.S.C. § 1983 against the City and County of Denver, the Mayor of Denver, the fire chief of the Denver Fire Department, and the Civil Service Commission of the City and County of Denver. They alleged, inter alia, that the defendants violated their right to privacy by disclosing a police report to the media that contained statements by the plaintiffs and witnesses, and the reports of polygraph examinations, indicating that the plaintiffs had used contraband drugs. The district court determined that “the right to privacy does not encompass the kind of information allegedly released to the media.” Id. at 838. This court affirmed the district court’s dismissal of the action. Id. at 840. In support of its decision, this court reasoned as follows: “Validly enacted drug laws put citizens on notice that this realm is not a private one. Accurate information concerning such unlawful activity is not encompassed by any right of confidentiality, and therefore it may be communicated to the media.” Id. at 839.
The facts in this case bear little resemblance to the disclosure to the media in Mangels that two firefighters had used contraband drugs. In Mangels, as in Eastwood, the plaintiffs were government employees of the defendants. Unlike Herring, they had no restrictions on their personal freedom. In Mangels, the publication of the police report was made to the media. Herring’s complaint does not allege that Keenan’s disclosure was released to anyone other than his sister and restaurant employer. Furthermore, this court ultimately concluded in Mangels that there was no violation of the plaintiffs’ constitutional right to privacy. The mere recognition in Mangels that in some cases disclosure of personal information will result in a constitutional violation was not sufficient to put a probation officer on notice that the disclosure of a probationer’s HIV status to his sister and employer would violate the constitutional right to privacy.
Thus, while Eastwood, Lankford, and Mangels indicate that under some circumstances, a release of personal information regarding a person by a government officer may violate a constitutionally protected right to privacy, none of the cases discuss the question whether the right to privacy protects a probationer who may be HIV positive from a limited disclosure by his or her probation officer to persons whom the probation officer believed might be affected by their contact with the probationer. The cases, therefore, did not clearly establish such a right in 1993.
We also emphasize that the district court and the magistrate judge each considered the same Tenth Circuit authority cited by the plaintiff in her opposition to the motion to dismiss. The magistrate judge, after analyzing Mangels, Eastwood, and Lankford, concluded that a reasonable probation officer “would not have known in late 1993 that the disclosure of a proba *1179 tioner’s HIV status to his employer, sister, and roommate was an unconstitutional infringement of the right [to privacy].” The district court, after construing the same cases, concluded that “the contours of the constitutional right to privacy as it relates to dissemination of one’s actual or potential HIV status were clearly established in 1993.”
The plaintiff asserts that no less than seven federal courts outside of the Tenth Circuit have “recognized the existence of a constitutionally protected privacy interest in maintaining the confidentiality of an individual’s HIV status.” None of these cases, however, address the question we must decide. See Glover v. Eastern Nebr. Com. Office of Retardation, 686 F.Supp. 243, 250-51 (D.Neb.1988) (holding that a policy requiring employees to submit to mandatory AIDS testing can be enjoined as violative of the Fourth Amendment), aff'd, Glover v. Eastern Nebr. Com. Office of Retardation, 867 F.2d 461, 463-64 (8th Cir.1989); Woods v. White, 689 F.Supp. 874, 877 (W.D.Wis.1988) (“Casual unjustified dissemination of confidential medical information [regarding a prison inmate] to non-medical staff and other prisoners can scarcely be said to belong to the sphere of defendants’ discretionary function.”); Doe v. Borough of Barrington, 729 F.Supp. 376, 382-85 (D.N.J.1990) (holding that the disclosure by arresting officers to a neighbor that the husband and father of the plaintiffs had AIDS violated the Fourteenth Amendment rights of his wife and children); Doe v. City of Cleveland, 788 F.Supp. 979, 986 (N.D.Ohio 1991) (holding that police officers sued in their official capacity are not liable for a violation of a privacy interest where the police department did not have a policy of deliberately failing to train its officers with respect to the confidentiality of records); Doe v. Town of Plymouth, 825 F.Supp. 1102, 1107, 1109 (D.Mass.1993) (holding that the plaintiff had presented sufficient evidence of a violation of the right to privacy to withstand a motion for a summary judgment where she presented evidence that a police officer forced the victim of a theft to admit she had AIDS before he would return a prescription medication that had been stolen from her residence); Doe v. City of New York, 15 F.3d 264, 269 (2d Cir.1994) (holding that the plaintiff had a right of privacy in the contents of a settlement agreement that stated that the plaintiff had sued his employer for failing to hire him because he was a single gay male and because his employer suspected that he had AIDS).
None of the cases identified by the plaintiff involved a limited disclosure by a probation officer to a probationer’s sister and restaurant employer of voluntarily exposed information that the probation officer believed was necessary to protect them from the possibility of an inadvertent exposure to HIV. Though a plaintiff is not required to show that the specific conduct was previously found to have been held unlawful, there must be a substantial correspondence so that the unlawfulness was apparent. See Hilliard, 930 F.2d at 1518. In the present ease, the plaintiff has shown that there is “a clearly established right in the abstract” to privacy from disclosure of personal information by government officials. See Id. The plaintiff has not shown, however, that the district court cases cited amount to a sufficient weight of authority establishing a clearly established right of privacy in this case. The plaintiff has further failed to demonstrate that the contours of that right were sufficiently clear in late 1993 so that a reasonable probation officer would understand that he or she could not disclose to a probationer’s close relative or restaurant employer that the probationer had tested positive to HIV. The plaintiff has failed to demonstrate a substantial correspondence between Keenan’s disclosures and conduct that has been held to violate the right to privacy in prior decisions. See id.
The plaintiff also argues that a reasonable government officer in Keenan’s position would have known that she was violating Herring’s clearly established constitutional right to privacy be *1180 cause the policies governing Keenan’s conduct as a probation officer prohibited her from disclosing his HIY status without his consent. See Guide to Judicial Policies and Procedures, Yol X, ch. IV, p. 16, sec. 16(D). This court has held, however, that the fact that an official discloses information in violation of his own internal procedures does not make the disclosure a violation of a clearly established constitutional right to privacy. See Pueblo Neighborhood Health Centers, Inc. v. Losavio, 847 F.2d 642, 647 (10th Cir.1988) (quoting Davis v. Scherer, 468 U.S. 183, 194, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984)). In Davis, the Supreme Court held that “[o]fficials sued for 'constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision.” 468 U.S. at 194, 104 S.Ct. 3012. The Court warned that to hold otherwise would subject officials to liability for a violation 'of any constitutional right, including those that were not foreshadowed at the time of' the violation, simply because the conduct violated a regulation. See id. at 195, 104 S.Ct. 3012. The Court also cautioned that subjecting officials to a risk of liability for violation of policies, and regulations would be particularly unsound policy given that government officials are often “subject to a plethora of rules, often so voluminous, ambiguous, and contradictory, and in such flux that officials can only comply with or enforce them selectively.” Id. at 196, 104 S.Ct. 3012 (internal quotations and citation omitted). To ensure that a government official is subject to hability only for a violation of a clearly established constitutional right, “there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts.” Anaya, 195 F.3d at 594. Thus, without a stronger indication from the courts that a reasonable probation officer in Keenan’s position would have known that she was violating Herring’s constitutional rights by disclosing his HIV status, rather than simply violating an internal policy, we cannot say that Keenan violated Herring’s clearly established constitutional right to privacy.
A reasonable government officer is presumed to be mindful of clearly established law. V-1 Oil Co. v. Wyoming, 902 F.2d 1482, 1493 (10th Cir.1990). In late 1993, however, there were no decisions from any federal court that discussed whether a probation officer had a duty not to disclose to a probationer’s sister and his restaurant employer the fact that a probationer had voluntarily reported that he had taken an HIV test and might be infected with HIV. The published decisions in late 1993 had made it clear that the constitutional right to privacy precluded government officers from forcing a fellow employee, Eastwood, 846 F.2d at 631, or the victim of a crime, Town of Plymouth, 825 F.Supp. at 1109, to disclose personal information. It was also clear that ordinary citizens had the right to be free from the disclosure of personal information for an improper motive, such as sexual harassment, Eastwood, 846 F.2d at 631, and that a prisoner had the right to be free from the disclosure of his medical information to non-medical staff and other prisoners, Woods, 689 F.Supp. at 877. These cases did not clearly establish that the limited right of privacy enjoyed by a probationer would be violated by the disclosure of personal information alleged in the second amended complaint. Neither did the internal policies governing the conduct of a probation officer clearly establish such a constitutional right. Thus, Keenan is entitled to qualified immunity for her disclosures of Herring’s HIV status to his sister and employer.
CONCLUSION
We reverse the district court’s order denying Keenan’s motion to dismiss because we hold that the district court erred in ruling that Keenan violated Herring’s clearly established right to privacy when she disclosed in 1993 that he was HIV positive to his restaurant employer and his *1181 sister. The district court erred in concluding that Keenan was not entitled to qualified immunity.
The judgment of the United States District Court for the District of Colorado is REVERSED and REMANDED for further proceedings in accordance with this opinion.

. Since filing his original complaint, Frederick Herring passed away. His sister, Sylvia Herring, was substituted as plaintiff in the second amended complaint.

. The second amended complaint also alleges on information and belief that Keenan also contacted Herring’s roommate to tell him that Herring was HIV positive. This allegation was withdrawn by Herring's counsel during the April 2, 1997, hearing on the motion to dismiss.

. In the responsive brief, the plaintiff concedes that A.L.A. v. West Valley City, 26 F.3d 989 (10th Cir.1994) was "overlooked” by the parties when the motion to dismiss was pending in the district court.

. The plaintiff argues that even though A.L.A. was not decided until 1994, the opinion demonstrates that the right to privacy in the nondisclosure of one's HIV status was clearly established in 1989 because the disclosure in that case was made in 1989. In A.L.A., however, this court did not consider whether that right was clearly established in 1989 or whether the government official that disclosed the information was entitled to qualified immunity. 26 F.3d 989. Rather, this court held that, in 1994, confidential medical information is protected and the plaintiff had standing to pursue a claim for the disclosure of that information. See id. at 990.