**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

C. M.,

    Plaintiff - Appellant,

v.

CHRISTOPHER URBINA; REBECCA
JORDAN; NANCY WOLFF; PATRICIA
MOSHURE; RACHELLE BOESPFLUG;
MELISSA EVERTS; JASON JOHNSON,

    Defendants - Appellees.

No. 15-1067
(D.C. No. 1:13-CV-01878-RBJ)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **BALDOCK**, and **HOLMES**, Circuit Judges.
_____

    Plaintiff-appellant C.M., a registered sex offender, brought this action pursuant to 42 U.S.C. § 1983 asserting one claim against four public-health officials and another claim against three probation officers. He appeals the dismissal on qualified immunity grounds of both claims. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I. Background

In 2002, C.M. pleaded guilty to two counts of sexual assault and was sentenced to twenty-five years of probation. As a condition of his probation, he was required to complete sexual-offense-specific therapy. He enrolled and began participating in a treatment program with Aurora Mental Health. Other conditions of his probation included that he disclose to potential romantic partners his status as a registered sex offender by the third date, and that he disclose to his treatment provider his intention to enter into a sexual relationship and obtain permission to do so.

In 2005, C.M. tested positive for human immunodeficiency virus (HIV). In 2006, he tested positive, and was treated, for chlamydia. Despite the treatment, after his initial positive test, C.M. repeatedly tested positive for chlamydia for some time until he was cured with a more rigorous antibiotic therapy. Per state law, the positive test results for HIV and chlamydia were reported to the Colorado Department of Public Health and Environment (CDPHE). Colo. Rev. Stat. § 25-4-402.

The CDPHE contacted C.M. in 2010 and, in the process of trying to locate him, learned he was a registered sex offender. When C.M. met with defendant Pat Moshure, a CDPHE employee, she asked him to sign a release to allow the CDPHE to share information about his HIV status with Aurora Mental Health. He declined to do so and was then offered a choice between participating in ten sessions of risk-reduction counseling or being subject to a public health order. C.M. chose the counseling. He was referred to a counselor who told him she would not begin the

counseling sessions unless he signed a release allowing her to share information with Aurora Mental Health and his probation officer. C.M. refused to do so, and no counseling sessions took place.

C.M. later learned that the referral letter from Ms. Moshure to the counselor advised that most of his sex partners were younger men, that a number of charges had been made against him for failing to disclose his HIV status before having sex, and that the CDPHE "would like to see [the counselor] address the dating younger men issue and tie that into nondisclosure." Aplt. App. at 28 (internal quotation marks omitted). According to the third amended complaint, Ms. Moshure disapproved of C.M. choosing younger sex partners and was trying to make him choose older ones.

Later in 2010, the CDPHE contacted C.M. again and served him with a notice-of-counseling order. The order stated that health professionals had received reports of C.M. failing to disclose his HIV status before having sex on at least three occasions and that he continued to "demonstrate behavior that endangers the health of others." *Id.* at 30 (internal quotation marks omitted). C.M. denies these allegations, stating in the third amended complaint that he "has never engaged in sexual relations, while on probation, without first disclosing his HIV status." *Id.* The order directed him to receive ten sessions of risk-reduction counseling from the counselor he was referred to previously.

In response to the order, C.M. called the CDPHE. This time he spoke with defendant Nancy Wolff, another CDPHE employee. After he explained that he did not want to sign the counselor's release, Ms. Wolff advised him to comply with the

3

counselor's demand. The third amended complaint alleges that Ms. Wolff told him this because she and other CDPHE employees were motivated by the improper goal of making him choose older sex partners.

In May 2011, the CDPHE served C.M. with a cease-and-desist order demanding that he "(1) cease and desist from withholding his HIV positive status from sex partners prior to sexual contact; (2) cease and desist from engaging in oral, vaginal or anal sexual intercourse without proper latex condom use; and (3) cease and desist from engaging in other behaviors that may result in HIV transmission such as sharing injection drug use paraphernalia with other persons and donating blood, plasma, sperm, organs or tissues." *Id.* at 33-34 (internal quotation marks omitted). Defendant Christopher Urbina, the executive director of the CDPHE, signed the order. The third amended complaint alleges that C.M. was already complying with those demands. *Id.* at 34.

In June 2011, the CDPHE sought to enforce the cease-and-desist order by bringing an action in state court. After two hearings, the district court entered a written order in October 2011 mandating that C.M. comply with the three demands in the cease-and-desist order and submit to ten sessions of risk-reduction counseling with Aurora Mental Health, in addition to the therapy he was receiving as part of the treatment program. The order did not require C.M. to sign a release but did state that

> the Department and Aurora Mental Health may exchange information regarding [C.M.'s] HIV status and whether [C.M.] is complying with the Department's order, including whether [C.M.] is adequately and appropriately informing sexual partners about his HIV status and whether he has contracted other STDs transmitted in a means similar to

4

HIV. However, the Court does not find that the Department is entitled to know about other, unrelated, aspects of [C.M.'s] counseling at Aurora Mental Health, and will not permit the exchange of information outside the scope discussed above.

Aplee. Suppl. App. at 46.[1]

Later that month, defendant Rebecca Jordan, another CDPHE employee, disclosed to Aurora Mental Health C.M.'s HIV status as well as allegations the CDPHE had received about C.M. having violated the terms of the cease-and-desist order. As a result, C.M. was discharged from the treatment program in November 2011.

Defendants Rachelle Boespflug and Jason Johnson, probation officers, then filed a complaint for revocation of C.M.'s probation because he was no longer in compliance with his probation requirements. C.M. was arrested and spent seventy-seven days in jail before the state court dismissed the complaint and ordered him to resume treatment.

After his release, Aurora Mental Health did not allow C.M. to reenroll in the treatment program, and three other treatment providers would not accept him either. Defendant Melissa Everts, another probation officer, and Mr. Johnson filed a second complaint for revocation of C.M.'s probation in March 2012. C.M. was arrested

---

[1] On appeal, the district court's order was vacated in April 2013 because it was not supported by competent evidence. Aplee. Suppl. App. at 23. A witness for the CDPHE had testified that in seeking the order the CDPHE relied on statements from three unnamed individuals that C.M. had not disclosed his HIV status to them before having sex. *Id.* at 21. The appellate court concluded "the witness's testimony, which was not admitted for the truth of the matter asserted, was not legally sufficient to sustain the CDPHE's burden of proof in this case." *Id.* at 22.

again and jailed for seven days. In July 2012, he started another treatment program with a different provider but had to redo some work he had already completed with Aurora Mental Health.

C.M. filed this action in July 2013 and the third amended complaint in June 2014. The gist of his claim against the public-health officials is that their actions were motivated by the improper goal of preventing him from having consensual sex with younger partners and therefore violated his rights under the First, Fourth, and Fourteenth Amendments. His claim against the probation officers is based on the legal theory that they failed to disclose material exculpatory information (i.e., that he had cooperated fully in the treatment program with Aurora Mental Health but was discharged "through no fault of his own" due to allegations by the CDPHE that the probation officers knew lacked evidentiary support, Aplt. Opening Br. at 31-32) when they filed revocation complaints against him, thereby violating his rights under the Fourth and Fourteenth Amendments.

Defendants' motion to dismiss asserted a qualified immunity defense among other grounds for dismissing the third amended complaint. The district court agreed that all the defendants were entitled to qualified immunity because the complaint failed to show they had violated C.M.'s clearly established rights.

On appeal, C.M. argues that the district court erred by dismissing the claims against the public-health officials because "[t]he right of homosexual adults to associate as they themselves determine . . . is clearly established." *Id.* at 17. He argues that the claims against the probation officers should not have been dismissed

6

because the omission of material exculpatory facts from the affidavits seeking revocation of his probation and warrants for his arrest violated his clearly established rights.

## II. Analysis

We review de novo dismissals based on qualified immunity. *Stewart v. Beach*, 701 F.3d 1322, 1330 (10th Cir. 2012). Where, as here, we must determine whether a motion to dismiss was properly granted, "[w]e accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Mink v. Knox*, 613 F.3d 995, 1000 (10th Cir. 2010). But purely conclusory allegations are not entitled to be presumed true. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). We may also consider facts subject to judicial notice, such as documents that are matters of public record, without converting the motion to dismiss into a motion for summary judgment. *Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006).

"In resolving a motion to dismiss based on qualified immunity, a court must consider whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011) (internal quotation marks omitted). The plaintiff bears the burden of demonstrating that the law was clearly established at the time of the alleged violation. *Herring v. Keenan*, 218 F.3d 1171, 1175 (10th Cir. 2000). Courts may address either prong of the qualified immunity analysis first. *Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015). In dismissing C.M.'s third amended complaint,

7

the district court addressed only the second prong. We agree the second prong is dispositive in this case.

A constitutional right is clearly established if its contours are clear enough that a reasonable official would understand what he or she was doing violated it. *Id.* at 1004-05. "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Thomas v. Durastanti*, 607 F.3d 655, 669 (10th Cir. 2010) (internal quotation marks omitted). Courts should not define clearly established law at a high level of generality but instead on the basis of the specific context of the case. *Quinn*, 780 F.3d at 1005. General statements of law are insufficient to satisfy the "clearly established" prong of the qualified immunity test. *See Hope v. Pelzer*, 536 U.S. 730, 753 (2002). Rather, the unlawfulness of the official action must be apparent in light of the pre-existing law. *Id.* at 739. In determining whether a right is clearly established, "it is crucial to look at precedent applying the relevant legal rule in similar factual circumstances. Such cases give government officials the best indication of what conduct is unlawful in a given situation." *Id.* at 753.

## A. Claim Against Public-Health Officials

C.M.'s claim against the public-health officials has several components. First, he argues that by referring him to counseling and later bringing suit to enforce the cease-and-desist order, they interfered with his clearly established right to freedom of association, including his right to choose younger men as his sex partners. Second,

8

by bringing the suit for an improper purpose without any competent evidence, they violated his clearly established right to due process. Third, by referring him to counseling and bringing the suit, they were attempting to make him waive his clearly established right to privacy in his medical records. Fourth, by disclosing his medical information to the counselor and Aurora Mental Health, they violated his clearly established right to privacy.

In arguing that the public-health officials violated his clearly established rights, C.M. relies heavily on *Lawrence v. Texas*, 539 U.S. 558 (2003), which held that a state statute making it a crime for two persons of the same sex to engage in certain intimate sexual conduct was unconstitutional. More broadly, the case stands for the proposition that in the absence of a legitimate government interest, individuals have the right to engage in private conduct without government intervention into their personal lives. *Id.* at 578.

**1. Freedom of Association**

C.M. argues broadly that under *Lawrence*, the public-health officials should have known that their attempts to interfere with his personal life violated his clearly established rights. However, he fails to explain with any specificity how *Lawrence* could have put the public-health officials on notice that attempting to get him to receive risk-reduction counseling was unlawful. *See Quinn*, 780 F.3d at 1005 ("We must scrupulously adhere to our longstanding duty to ascertain clear law (clear answers) that would apply to the situation at hand." (internal quotation marks omitted)). Further, although the third amended complaint alleges that the public-

health officials *attempted* to limit and influence his choice of sex partners, C.M. does not allege that any actual interference with his choice of sex partners occurred. Nothing in the cease-and-desist order prohibits him from choosing younger sex partners, and we are not persuaded that the action to enforce the order is analogous to a criminal prosecution for engaging in constitutionally protected conduct. *Cf. Lawrence*, 539 U.S. at 563. C.M. also fails to explain how having to receive risk-reduction counseling or being subject to a public-health order actually infringed on his freedom of association. Indeed, with respect to the order, C.M. alleges that he was already in compliance with it.

Moreover, limitations on the right of association may be justified if they serve a compelling governmental interest. *See Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 549 (1987). In the interest of protecting the public health, the Colorado General Assembly has authorized public-health officials to take measures – even restrictive enforcement measures – to prevent the spread of HIV. Colo. Rev. Stat. § 25-4-1401. In light of the governmental interest at stake, we cannot say that clearly established law would have put a reasonable official in the public-health officials' position on notice that referring C.M. to counseling or enforcing the cease-and-desist order was unlawful. *See Quinn*, 780 F.3d at 1014.

## 2. Due Process

Apparently relying on a legal theory akin to malicious prosecution, C.M. seems to argue that the public-health officials violated his right to due process by bringing the suit when they did not have competent evidence to support the issuance

10

of the cease-and-desist order. However, he makes no attempt in either the third amended complaint or his opening brief to state the elements of such a claim, much less show that they are satisfied here. *See Novitsky v. City of Aurora*, 491 F.3d 1244, 1257-58 (10th Cir. 2007) ("[W]hen addressing § 1983 malicious prosecution claims, we use the common law elements of malicious prosecution as the starting point of our analysis . . . ." (internal quotation marks omitted)). And given that the state court granted much of the relief requested by the CDPHE, we cannot conclude that bringing the action violated C.M.'s clearly established due process rights.

C.M. offers no authority, nor are we aware of any, for the proposition that public-health officials who prevail on enforcing a cease-and-desist order in court may yet violate an individual's clearly established rights. The fact that the court's decision was overturned on appeal does not materially change the analysis. Although the statements relied on by the CDPHE in issuing the order were later deemed insufficient to meet its burden in court, such a determination does not amount to a finding that the officials acted unreasonably in bringing the action in the first instance. C.M. cites no authority to the contrary. *See Herring*, 218 F.3d at 1176 ("A plaintiff cannot simply identify a clearly established right in the abstract and allege that the defendant has violated it." (internal quotation marks omitted)).

## 3. Right to Privacy – Waiver

C.M. argues that the public-health officials' attempts to have him release his medical information violated his clearly established right to privacy. However, he concedes that these *attempts* were unsuccessful in that he never agreed to waive his

11

right to privacy and allow the CDPHE to share his medical information. In other words, although the CDPHE attempted to make C.M. waive his privacy rights, he never actually waived them. He cites no authority for the proposition that public-health officials who seek a waiver of certain rights from a person who declines to actually waive them constitutes a violation of his clearly established rights.

Further, as a probationer, C.M. is subject to some limitations on his constitutional rights. *Herring*, 218 F.3d at 1177. C.M. does not enjoy the absolute liberty to which other citizens are entitled, but only conditional liberty subject to restrictions. *United States v. Warren*, 566 F.3d 1211, 1215 (10th Cir. 2009) (citing *Griffin v. Wisconsin*, 483 U.S. 868, 874 (1987)). As a registered sex offender, he is subject to additional restrictions on his private conduct and privacy. Again, his reliance on *Lawrence* is misplaced given that the facts of that case bear little resemblance to those in this case. Thus, *Lawrence* does not support the conclusion that the public-health officials reasonably should have known that their conduct was unlawful.

## 4. Right to Privacy – Disclosure

Relying on *Herring*, C.M. also argues that the public-health officials violated his clearly established right to privacy by disclosing his medical information to the counselor and to the probation officers. We disagree. In *Herring*, a probation officer's disclosure of information about a probationer's HIV status to his sister and employer was found to have violated his right to privacy. 218 F.3d at 1175. However, the court went on to conclude that the probationer failed to demonstrate the

12

contours of that right were sufficiently clear when the disclosures were made. *Id.* at 1179.

Assuming that *Herring* established a clear right to privacy with regard to one's HIV status in a general sense, we conclude the public-health officials here were presented with different factual circumstances such that it was not apparent that their limited disclosures were unlawful. When the CDPHE "knows or has reason to believe . . . that a person has HIV infection and is a danger to the public health," it is authorized to issue an order requiring that person "to report to a qualified physician or health worker for counseling on the disease and for information on how to avoid infecting others . . . ." Colo. Rev. Stat. § 25-4-1406(2)(b). And although public health reports are considered "strictly confidential information," "[r]elease may be made of such information to the extent necessary to enforce . . . rules and regulations concerning the treatment, control, and investigation of HIV infection by public health officials." *Id.* § 25-4-1404(1)(b). It is hard to fathom how the CDPHE could exercise its authority under these statutes without disclosing a person's HIV status and the reasons for referring that person to counseling. Thus, we cannot conclude that Ms. Moshure's disclosures to the counselor were clearly unlawful.

Ms. Jordan's disclosures to Aurora Mental Health also were not clearly unlawful given that the CDPHE had obtained a court order expressly allowing it to exchange "information regarding [C.M.'s] HIV status and whether . . . [C.M.] is adequately and appropriately informing sexual partners about his HIV status . . . ." Aplee. Suppl. App. at 46. C.M. cites no authority, nor are we aware of any, for the

13

proposition that a reasonable public-health official disclosing certain information pursuant to a court order would know that her conduct was unlawful. We agree with the district court that C.M.'s allegations fall short of establishing that conduct by the public-health officials violated his clearly established rights.

Finally, in the absence of any specific allegation as to what information the CDPHE disclosed that was outside the parameters of the court's order, we decline to conclude that the public-health officials violated the order. C.M.'s allegation that the CDPHE disclosed more than the court order permitted is purely conclusory; thus, we are not bound to accept it as true for the purpose of this appeal. *See Iqbal*, 556 U.S. at 681.

## B.  Claim Against Probation Officers

With respect to his second claim, C.M. argues that the probation officers violated his clearly established rights by failing to include material exculpatory information when they submitted affidavits in support of revoking his probation and issuing warrants for his arrest. We disagree. According to the third amended complaint, both times the probation officers filed complaints to revoke C.M.'s probation, he admittedly was not in compliance with the requirement that he be in a treatment program. Aplt. App. at 40 ("The probation officers filed the probation revocation complaint as a result of C.M.'s termination from treatment."). Moreover, the complaint does not allege that the probation officers had anything to do with C.M.'s discharge from the treatment program with Aurora Mental Health. Indeed, the complaint alleges the disclosures *by the CDPHE* caused him to be discharged.

14

C.M. correctly points out that knowingly or recklessly omitting material information from an arrest affidavit violates a plaintiff's clearly established rights. *Stewart v. Donges*, 915 F.2d 572, 582-83 (10th Cir. 1990). However, he provides no authority for the proposition that these probation officers had a duty to disclose that he was "improperly terminated" from the treatment program. We are not required to accept C.M.'s bald allegation that the termination was improper. *See Iqbal*, 556 U.S. at 681 ("It is the conclusory nature of respondent's allegations . . . that disentitles them to the presumption of truth."). Further, the prohibition against deliberately omitting information from an arrest affidavit "does not extend to immaterial omissions" that would not have vitiated probable cause. *Stewart*, 915 F.2d at 583. Given the undisputed fact that C.M. was not in compliance with a requirement of his probation, there was probable cause to file the complaints and issue the warrants. The alleged omissions were therefore immaterial, and the probation officers were entitled to qualified immunity.

## III. Conclusion

The judgment of the district court is affirmed.

Entered for the Court

Bobby R. Baldock
Circuit Judge

15