**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 10, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

AARON ROMERO,

     Plaintiff - Appellant,

v.

UNITED STATES OF AMERICA;
JOHN R. CASTLEBERRY, Special
Agent - Drug Enforcement Administration,
in his individual capacity; PATRICIA G.
WHELAN, a/k/a Patricia Yazzie,
a/k/a Trish Yazzie, Special Agent - Drug
Enforcement Administration, in her
individual capacity; MATTHEW B.
MAYFIELD, Group Supervisor (GS) -
Drug Enforcement Administration, in his
individual capacity,

     Defendants - Appellees,

and

RAYMOND "KEITH" BROWN, Assistant
Special Agent in Charge (ASAC) - Drug
Enforcement Administration, in his
individual capacity; JOSEPH M. ARABIT,
Special Agent in Charge (SAC) - Drug
Enforcement Administration, in his
individual capacity,

     Defendants.

No. 15-2185
(D.C. No. 1:14-CV-00640-MV-WPL)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

    [*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of

(continued)

_____

Before **HARTZ**, **HOLMES**, and **McHUGH**, Circuit Judges.
_____

Aaron Romero appeals the district court's orders dismissing his claims against

the United States under the Federal Tort Claims Act (FTCA) and agents of the Drug

Enforcement Administration (DEA) under *Bivens v. Six Unknown Named Agents of*

*Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).  Exercising jurisdiction under

28 U.S.C. 1291, we affirm.

## I.  Background

According to the complaint, Mr. Romero, a resident of New Mexico, was

addicted to crack cocaine but had not used the drug for about five months in

November 2011.  At that time he was contacted by an acquaintance known as

"Cesario" who, in the past, had provided Mr. Romero with crack cocaine as

compensation for acquiring the drug from third parties on Cesario's behalf.

Unbeknownst to Mr. Romero, Cesario was working as an informant for the DEA.

When Cesario asked Mr. Romero to help him get some crack, Mr. Romero at first

refused, stating his intention to stay off the drug.  But after Cesario's repeated

requests, Mr. Romero accepted an offer to receive a large amount of crack for

arranging a deal.  This caused a "resurrection of Mr. Romero's crippling addiction to

this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

2

crack cocaine." Aplt. Opening Br. at 5. Mr. Romero participated in several more drug deals before he was arrested and charged with various drug offenses. Those charges were subsequently dismissed without prejudice after the government moved to dismiss the indictment as to Mr. Romero.

Mr. Romero then brought this action, alleging that the United States caused personal injury to him by exploiting his addiction to crack cocaine and causing him to relapse. The complaint asserts two claims against the United States for negligence and intentional infliction of emotional distress based on the DEA agents' distribution of crack cocaine to him. The complaint also asserts claims against the DEA agents involved in the investigation based on the legal theories that these defendants violated his Fifth Amendment rights to be free from both bodily harm and deprivation of liberty interests without due process of law.[1]

In response to defendants' motions to dismiss, the district court issued the two orders underlying this appeal. In one order, the court ruled that the claims against the United States were barred by the wrongful-conduct rule because the "allegations demonstrate that [Mr. Romero's] conduct was prohibited by federal criminal statute and was causally related to his alleged injuries, and that his conduct contributed to his injuries in at least the same degree as did the government's conduct." Aplt. App., Vol. 2 at 373. In the other order, the court ruled that the DEA agents were entitled to qualified immunity because Mr. Romero "failed to articulate clearly established law

_____

[1] None of the other claims in Mr. Romero's complaint are pertinent to this appeal.

3

that would have put the Individual Defendants on notice that their conduct in offering and providing [drugs to Mr. Romero] in exchange for brokering drug transactions violated his Fifth Amendment rights." *Id.* at 417.

On appeal Mr. Romero argues the district court erred by concluding that the wrongful-conduct rule bars his recovery and that he proximately caused his injuries. He also argues the DEA agents committed outrageous government conduct by providing him with crack cocaine, violating his clearly established due process rights, and therefore they were not entitled to qualified immunity.

## II. Analysis

We review de novo the district court's dismissal of Mr. Romero's claims against the United States for failure to state a claim. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). We apply the same standards as the district court, accepting as true the well-pleaded factual allegations in the complaint and viewing the alleged facts in the light most favorable to Mr. Romero. *Id.* We also review de novo the district court's grant of qualified immunity to the DEA agents. *Weise v. Casper*, 593 F.3d 1163, 1166 (10th Cir. 2010).

## A. The Wrongful-Conduct Rule

Mr. Romero argues that his complaint states a claim for negligence and intentional infliction of emotional distress against the United States because the allegations show the government's actions "reignited" his addiction to crack cocaine. Aplt. App., Vol. 1 at 59. We disagree.

4

Under New Mexico law, a plaintiff cannot maintain a claim based on his own illegal conduct.

> It is a well settled rule of law that a person cannot maintain an action if, in order to establish his cause of action, he must rely, in whole or in part, on an illegal or immoral act or transaction to which he is a party, or where he must base his cause of action, in whole or in part, on a violation by himself of the criminal or penal laws.

*Desmet v. Sublett*, 225 P.2d 141, 142 (N.M. 1950). The principle of public policy behind this rule is that "[n]o court will lend its aid to a man who founds his cause of action upon an immoral or illegal act." *Id.* (internal quotation marks omitted).

Mr. Romero cites no authority for why the wrongful-conduct rule should not apply here. By his own admission, he agreed to resume acquiring crack cocaine for Cesario, brokered multiple drug transactions, and consumed the cocaine he received in exchange for his role in the transactions. All of his purported damages stem from these illegal acts, which he chose to perform, his addiction to crack cocaine notwithstanding. Indeed, when he first accepted Cesario's offer, he had been off cocaine for about five months. To the extent he argues that his will was overborne by his addiction, he does not allege that the government caused his addiction.

Mr. Romero argues that the wrongful-conduct rule as articulated in *Desmet* is an "anachronism" in light of New Mexico's adoption of a comparative fault analysis of tort claims. Aplt. Opening Br. at 12. Assuming for the purposes of this appeal that he adequately presented this argument to the district court, we conclude that it lacks merit. In *Rodriguez v. Williams*, 355 P.3d 25, 29 (N.M. Ct. App. 2015), the court declined to apply the rule to preclude recovery for an intoxicated driver, who

5

was injured when another driver ran a red light and crashed into his vehicle. The court found that, "consistent with *Desmet*," the injured driver's damages were properly limited solely to the other driver's negligence, and his "recovery was reduced by the portion of the damages attributed to his unlawful act." *Id.* at 28. Notably, the injured driver "did not seek to profit from any impairment to his driving." *Id.* at 29. Here, Mr. Romero's damages undoubtedly arose when he engaged in illegal conduct. He cannot "profit" from his own illegal conduct. And as the *Rodriguez* decision makes clear, the wrongful-conduct rule is not inherently incompatible with a comparative fault framework.

Moreover, Mr. Romero's illegal use of crack cocaine was an integral and essential part of his case. He cannot dispute that this conduct was a proximate cause of his asserted injuries. *See Orzel v. Scott Drug Co.*, 537 N.W.2d 208, 215-17 (Mich. 1995) (discussing the causation requirement under Michigan's wrongful-conduct rule and concluding that recovery was barred where the plaintiff's illegal use of a controlled substance served as a proximate cause of his asserted injuries). Under the circumstances here, Mr. Romero's insistence that the government's conduct was also a proximate cause of his injuries misses the mark – it is his own conduct, not the government's, which bars his recovery. We conclude the district court did not err by relying on the wrongful-conduct rule to dismiss Mr. Romero's claim.

**B. Qualified Immunity**

Mr. Romero argues that the DEA agents were not entitled to qualified immunity because they committed outrageous government conduct, thereby violating his clearly established substantive due process rights. We are not persuaded.

"In resolving a motion to dismiss based on qualified immunity, a court must consider whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011) (internal quotation marks omitted). The plaintiff bears the burden of demonstrating that the law was clearly established at the time of the alleged violation. *Herring v. Keenan*, 218 F.3d 1171, 1175 (10th Cir. 2000). We conclude that Mr. Romero has not met this burden.

A constitutional right is clearly established if its contours are clear enough that a reasonable official would understand what he or she was doing violated it. *Quinn v. Young*, 780 F.3d 998, 1004-05 (10th Cir. 2015). "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Thomas v. Durastanti*, 607 F.3d 655, 669 (10th Cir. 2010) (internal quotation marks omitted). General statements of law are insufficient to satisfy the "clearly established" prong of the qualified immunity test. *See Hope v. Pelzer*, 536 U.S. 730, 753 (2002). Rather, the unlawfulness of the official action must be apparent in light of the pre-existing law. *Id.* at 739. In

7

determining whether a right is clearly established, "it is crucial to look at precedent applying the relevant legal rule in similar factual circumstances. Such cases give government officials the best indication of what conduct is unlawful in a given situation." *Id.* at 753.

Outrageous government conduct during a criminal investigation may constitute a violation of substantive due process rights. *United States v. Mosley*, 965 F.2d 906, 908-09 (10th Cir. 1992). Although "[n]o federal court has defined the requirements of the outrageous conduct defense with any degree of precision[,] . . . this is an extraordinary defense reserved for only the most egregious circumstances." *Id.* at 910. "It is not to be invoked each time the government acts deceptively or participates in a crime that it is investigating." *Id.*

In *United States v. Harris*, 997 F.2d 812, 817 (10th Cir. 1993), this court suggested that government distribution of drugs to a known addict might constitute outrageous conduct under certain circumstances. The court stated, however, that "[a]ny definitive rule of law concerning whether a government agent's sale of narcotics to a known addict constitutes outrageous government conduct would necessarily be flawed." *Id.* at 818. And in light of law enforcement's need to conduct undercover operations in targeting drug dealers, "it would be nonsensical to promulgate a rule holding outrageous government conduct each and every time the government distributed narcotics to a known addict." *Id.*

Although *Harris* was a direct criminal appeal, the underlying facts are analogous to those here. The defendant facilitated purchases of crack cocaine for an

8

undercover agent in exchange for a cut of what was sold. *Id.* at 814. The court identified three relevant factors for determining whether government conduct is outrageous: (1) excessive government involvement in the creation of the crime; (2) significant governmental coercion to induce the crime; and (3) reliance on a known addict to carry out multiple transactions with the primary purpose of stacking charges against a criminal defendant, as opposed to having a legitimate investigatory purpose. *Id.* at 816-19.

The court concluded that neither of the first two factors was satisfied in this type of routine drug investigation. "[T]he government's role in instigating the transaction and acting as a buyer does not amount to creating the crime." *Id.* at 816. And even if the agent "enticed" the defendant to participate, "he was not coerced to the point of outrageousness." *Id.* at 818. Thus, the *Harris* decision would not have put the DEA agents on notice that their conduct in the undercover investigation violated Mr. Romero's clearly established rights. *See also Mosely*, 965 F.2d at 911-12 (10th Cir. 1992) (holding that the government can suggest illegal activity, provide supplies and expertise for the illegal activity, and act as both supplier and buyer in sales of illegal goods without creating the crime, and that "coercion of any type must be particularly egregious before it will sustain an outrageous conduct defense").

With respect to the third factor, the *Harris* court remanded the case for further proceedings to determine whether the multiple transactions were conducted "with the primary purpose of stacking charges." 997 F.2d at 819 ("Absent a specific

9

investigatory purpose, the agent could not continue to conduct these transactions *ad infinitum* thereby constantly increasing the charges, which necessarily increases the attendant mandatory sentence length."). But this factor would not have put the DEA agents on notice that their conduct violated Mr. Romero's due process rights, particularly given the allegations in this case, which presume that a legitimate investigatory purpose motivated the agents, at least in part. The complaint alleges that they exploited Mr. Romero's addiction to crack cocaine "to further the investigative goals" of their operation and "to target drug trafficking suspects" in the area. Aplt. App., Vol. 1 at 25. Absent is any specific factual statement alleging that the DEA agents conducted multiple transactions with the primary purpose of stacking charges against him. *See Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) ("[I]n examining a complaint under Rule 12(b)(6), we will disregard conclusory allegations and look only to whether the remaining factual allegations plausibly suggest the defendant is liable."). Under these circumstances, the complaint fails to allege any conduct that the DEA agents would have understood violated Mr. Romero's constitutional rights.

Therefore, the district court did not err by concluding the DEA agents were entitled to qualified immunity.

## III. Conclusion

The district court's orders are affirmed.

Entered for the Court


Carolyn B. McHugh
Circuit Judge